1
2
3

ERIC L. CHRISTENSEN
JONATHAN D. TEBBS
CAIRNCROSS & HEMPELMANN PS
524 SECOND AVENUE, SUITE 500
SEATTLE, WA  98104
T: 206.587.0700

HONORABLE ROSANNA
MALOUF PETERSON

4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

7
8
9
10
11
12
13
14
15

BLOCKTREE PROPERTIES, LLC, a
Washington limited liability company,
CORSAIR INVESTMENTS WA, LLC,
a Washington limited liability company,
CYTLINE, LLC, a Delaware limited
liability company, 509 MINE, LLC, a
Washington limited liability company,
MIM INVESTORS, LLC, a Washington
limited liability company, MINERS
UNITED, LLC, a Washington limited
liability company, TELCO 214
WHOLESALE SOFTWARE, INC., a
Washington corporation, MARK
VARGAS, an individual, and,
WEHASH TECHNOLOGY, LLP, a
Washington limited liability company,

NO. 18-00390 RMF

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION AND
REQUEST FOR EXPEDITED RELIEF

NOTE ON MOTION CALENDAR:
MARCH 19, 2019

ORAL ARGUMENT REQUESTED

16

Plaintiffs,

17

v.

18
19
20

PUBLIC UTILITY DISTRICT NO. 2
OF GRANT COUNTY,
WASHINGTON, a Washington
municipal corporation, TERRY

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1  BREWER, individually and in his
official capacity, BOB BERND,
2  individually and in his official capacity,
DALE WALKER, individually and in
3  his official capacity, TOM FLINT,
individually and in his official capacity,
4  LARRY SCHAAPMAN, individually
and in his official capacity, and DOES
5  1-10, managers and employees of Grant
PUD, individually and in their official
6  capacities,

7                 Defendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1

# TABLE OF CONTENTS

2
                                                                                    **Page**

TABLE OF AUTHORITIES ..................................................................... ii

APPENDIX OF ACRONYMS, ABBREVIATIONS, AND TECHNICAL
TERMS ......................................................................................... v

I.    INTRODUCTION AND RELIEF REQUESTED ........................................ 1

II.   STATEMENT OF FACTS ................................................................ 2

      A.    Grant PUD .................................................................... 2
      B.    Plaintiffs. ..................................................................... 3
      C.    Rate Schedule 17 ........................................................... 4

III.  AUTHORITY AND ARGUMENT ..................................................... 13

      A.    The Preliminary Injunction Standard. ................................. 13
      B.    Plaintiffs Are Likely To Succeed On The Merits. ................... 13
            1.    RS-17 Is Illegally Discriminatory and Imposes Grossly
                  Excessive Rates on Plaintiffs. ................................ 13
            2.    RS-17 Violates Plaintiffs' Rights to Due Process. ........ 21
                  a.    RS-17 Deprives Plaintiffs of Constitutionally
                        Protected Interests. .................................. 21
                  b.    RS-17 Lacks Even Basic, Minimal Procedural
                        Safeguards. ............................................ 22
            3.    RS-17 Violates the Privileges and Immunities Clause of
                  the Washington Constitution. .................................. 25
      C.    Plaintiffs Face an Immediate Threat of Harm. ...................... 27
      D.    The Equities Favor the Plaintiffs. ...................................... 28
      E.    Granting Plaintiffs' Request Will Further the Public Interest. .......... 29

IV.   CONCLUSION ............................................................................ 30

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

# TABLE OF AUTHORITIES

**Cases**

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470 (9th Cir. 1985).............................................................................................................28

*Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn. 2d 342 (Wash. 2015) ..............................................................26

*B.E. v. Teeter*, 2016 WL 3033500 (W.D. Wash. May 27, 2016) ...........................31

*Barry & Barry, Inc. v. State Dep't Motor Veh.*, 81 Wn. 2d. 155 (Wash. 1972)..............................................................................................................17

*California v. Azar*, 911 F.3d 558 (9th Cir. 2018) ....................................................13

*Carstens v. PUD No. 1 of Lincoln Cnty.*, 8 Wn. 2d 136 (Wash. 1941)...................15

*Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017).....................28

*Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975) .....................................................28

*Duffy v. Riveland*, 98 F.3d 447 (9th Cir. 1996) ........................................................24

*Faxe v. City of Grandview*, 48 Wn. 2d 342 (Wash. 1956) .......................................26

*Geneva Water Corp. v. City of Bellingham*, 12 Wn. App. 856 (Wash. Ct. App. 1975)..............................................................................................26

*Grant Cnty. Fire Prot. Dist. No. 5 v. City of Moses Lake*, 145 Wn. 2d 702 (Wash. 2002) .......................................................................................... 25, 27

*Harris v. Cnty. of Riverside*, 904 F.2d 497 (9th Cir. 1990)....................................25

*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) ................................. 13, 28, 30

*Holbrook, Inc. v. Clark Cnty.*, 112 Wn. App. 354 (Wash. Ct. App. 2002) .............25

*ICC v. Atl. Coast Line R.R. Co.*, 383 U.S. 576 (1966) ...........................................16

*J.L. Storedahl & Sons, Inc. v. Clark Cty.*, 143 Wn. App. 920 (Wash. 2008)..........21

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - ii

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

*Kootenai Elec. Coop., Inc. v. FERC*, 192 F.3d 144 (D.C. Cir. 1999) .................16

*Lincoln Shiloh Assocs., Ltd. v. Mukilteo Water Dist.*, 45 Wn. App. 123
  (Wash. Ct. App. 1986) ...............................................15

*Mass. Mun. Wholesale Elec. Co. v. City of Springfield*, 726 N.E.2d 973
  (Mass. App. Ct. 2000) ...............................................17

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ...............................23

*Matter of Troupe*, 4 Wn. App. 2d 715 (Wash. Ct. App. 2018)................22

*Morgan v. U.S.*, 304 U.S. 1 (1938) .......................................25

*Olympic Forest Prods., Inc. v. Chaussee Corp.*, 82 Wn. 2d 418 (Wash.
  1973)................................................................22

*Pac. Nw. Venison Producers v. Smith*, 1992 WL 613294 (W.D. Wash. Sept.
  2, 1992)..............................................................25

*Puget Sound Gillnetters Ass'n v. Moos*, 92 Wn. 2d 939 (1979)..............27

*Rahman v. Napolitano*, 814 F. Supp. 2d 1098 (W.D. Wash. 2011) .........21

*Ralph v. City of Wenatchee*, 34 Wn. 2d 638 (Wash. 1949) ..................26

*Schroeder v. Weighall*, 179 Wn. 2d 566 (Wash. 2014) .................. 25, 27

*Sheep Mountain Cattle Co. v. State*, 45 Wn. App. 427 (Wash. Ct. App. 1986)......22

*Silver Shores Mobile Home Park, Inc. v. City of Everett*, 87 Wn. 2d 618
  (Wash. 1976) .........................................................14

*Southwick, Inc. v. Wash. State*, 200 Wn. App. 890 (Wash. Ct. App. 2017)...........22

*State ex rel. Bacich v. Huse*, 187 Wn. 75 (Wash. 1936)..........................27

*State v. Vance*, 29 Wn. 435 (Wash. 1902) .................................26

*Verizon Md., Inc. v. Public Serv. Comm'n*, 535 U.S. 635 (2002) ...........16

*Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017)........................22

*Willner v. Comm. on Character & Fitness*, 373 U.S. 96 (1963) ...........25

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - iii

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1

**Statutes**

2

16 U.S.C. § 813 .......................................................................................16

3

28 U.S.C. § 1331 .....................................................................................16

49 U.S.C. § 11704 ...................................................................................16

4

RCW 54.16.080 .......................................................................................31

5

RCW 54.24.080 .................................................................................. 14, 17

6

RCW 74.38.070 .......................................................................................14

7

RCW Title 54 ............................................................................................2

8

**Other Authorities**

9

E. Merchant, *REC Silicon's Washington Plant Isn't Closing – Yet,* Greentech
    Media, (Sept. 26, 2018) .......................................................................11

10

Paul Roberts, *After the Bitcoin Bust and a Local Bankruptcy, Douglas
    County Doubles Down on Blockchain,* Seattle Times, Jan. 11, 2019 ................12

11

Wash. Const. art 1, § 12 ...................................................................... 25, 26

12

*Yakama Nation v. PUD No. 2 of Grant Cnty.*, 103 FERC ¶ 61,073 (2003) ............16

13

14

15

16

17

18

19

20

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - iv

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1

## APPENDIX OF ACRONYMS, ABBREVIATIONS, AND TECHNICAL TERMS

2

3

**Commissioners:**   Defendants Brewer, Bernd, Walker, Flint and Schaapman, who were the elected Commissioners of Grant PUD when Rate Schedule 17 was adopted.

4

**Blockchain:**   A computer technology that allows the use of independently verified distributed ledgers to permit transactions without the need for a trusted intermediary. Cryptocurrencies are one application that uses blockchain. *See, e.g.,* Claire Henley *et al., Energizing the Future With Blockchain,* 39 Energy L. J. 197, 200-05 (2018) (available at: https://www.eba-net.org/assets/1/6/14-197-232-Blockchain_[FINAL].pdf).

5

6

7

8

**Cryptocurrency:**   One of a number of non-governmental, computer-based currencies that operate using block-chain technology, which permits the use of a secure, immutable, open, and independently-verified distributed ledger of transactions, and can be used to transfer value between entities or persons that consent to the use of the cryptocurrency. *See, e.g.,* Commodities Futures Trading Commission, *A CFTC Primer on Virtual Currencies,* Oct. 17, 2017 (available at: https://www.cftc.gov/sites/default/files/idc/groups/public/%40customerprotection/documents/file/labcftc_primercurrencies100417.pdf); N. Tawari, *The Commodification of Cryptocurrency,* 117 Mich. L. Rev. 611 (2018).

9

10

11

12

13

14

**EI Queue:**   Grant PUD's policy, adopted in conjunction with Rate Schedule 17, the prioritizes all interconnection requests from "traditional" customers over all interconnection requests from cryptocurrency customers.

15

16

**FERC:**   The Federal Energy Regulatory Commission, a federal agency that regulates hydroelectric power, interstate commerce in electricity and natural gas, and related missions. *See* www.ferc.gov.

17

18

**FPA:**   Federal Power Act, 16 U.S.C. §§ 791a *et seq.*

19

20

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - v

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

**Grant PUD:** Defendant Public Utility District No. 2 of Grant County, Washington, a public utility district operating under Title 54 of the Revised Code of Washington.

**Grant Staff:** Defendants who were Grant PUD officers and employees who participated in the development and implementation of Rate Schedule 17.

**kwh:** Kilowatt-hours, a measure of electrical consumption. A device consuming one thousand watts of power for one hour consumes one kilowatt-hour of electricity.

**MWh:** Megawatt-Hours, a measure of energy production or consumption. An electric generator operating a one megawatt of capacity for one hour produces one megawatt-hour and an electric consumer using one megawatt of electricity for one hour consumes one megawatt-hour.

**MW:** Megawatts. A measure of electrical capacity.

**aMW:** Average megawatts. A measure of the load on an electrical system.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - vi

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

## I.    INTRODUCTION AND RELIEF REQUESTED

While the details of this case are complex, the legal issues are simple. Defendants (collectively, "Grant") have instituted a new "evolving industries" rate, Rate Schedule 17 ("**RS-17**"), that is blatantly discriminatory, lacks even basic due process protections, and will impose grossly excessive rates on Plaintiffs.

RS-17 treats Plaintiffs, all of whom provide security verification services for cryptocurrencies using blockchain computer technology, differently from any other industry, even though many industries served by Grant are "evolving" under the criteria of RS-17. Grant's own documents leave no doubt that Plaintiffs will see "their monthly power bills increase exponentially," that the rates Plaintiffs will pay are "*above the cost to supply*" incurred by Grant PUD, and Plaintiffs will be forced to "subsidize" Grant's "core" customers.[1]

In addition, RS-17 lacks even basic due process protections. Although RS-17 purports to create a process, governed by Grant Staff, to determine whether a given industry is "evolving," Plaintiffs are not accorded any rights in this process. In fact, on the same day Grant's Board of Commissioners adopted RS-17, Grant Staff circulated a press release stating "the rate applies to folks engaged in

---

[1] Declaration of Eric Lee Christensen ("Christensen Decl.") Ex. 1, GPUD_000522-000524; Christensen Decl. Ex. 2, GPUD_004164-004166 (emphasis added).

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 1

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1   crypto currency mining."[2]  But Grant Staff never engaged in the analysis

2   supposedly required by RS-17, and never provided Plaintiffs with notice, an

3   opportunity to comment, or a right to present evidence contrary to Staff's

4   conclusion.

5       RS-17 therefore clearly violates both the state and federal constitutions and

6   statutes. A temporary injunction is required because RS-17 threatens to impose rate

7   increases of 300%-400% on Plaintiffs that will bankrupt their businesses, destroy

8   tens of millions of dollars of investments they have made in Grant County, and

9   cause the loss of $2 million in annual revenues Plaintiffs would otherwise have

10  paid Grant PUD.

## II.    STATEMENT OF FACTS

**A.    Grant PUD**

13      Defendant Public Utility District No. 2 of Grant County ("**Grant PUD**") is a

14  Public Utility District operating under RCW Title 54 that provides electric service

15  to all electric consumers in Grant County, Washington.  Defendants Brewer,

16  Bernd, Walker, Flint, and Schaapman (collectively, the "**Commissioners**") were

17  Grant PUD's elected Commissioners who approved RS-17.  Does 1-10 are the

---

[2] Christensen Decl. Ex. 1, GPUD_000522.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 2

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1  officers and employees of Grant PUD (collectively, the "**Staff**") who developed

2  and recommended RS-17 for adoption by the Commissioners.

3      In 2017, Grant PUD sold more than 4.6 million Megawatt-hours ("MWh")

4  of electricity, and its load averaged 535 Megawatts ("MW"). The generating

5  capacity available from Grant PUD's existing resource portfolio exceeds 2,200

6  MW, sufficient to serve Grant's expected load growth through at least 2024.[3]

7  **B.    Plaintiffs.**

8      Plaintiffs are high technology firms that provide verification and security

9  services for block-chain based cryptocurrencies (often referred to as

10  cryptocurrency "mining") and, in some cases, other data center services.  Relying

11  on promises made by Grant PUD that their electric rates would remain low and

12  stable, each Plaintiff located data centers in Grant County and, collectively,

13  invested approximately $30 million in the County. Plaintiffs have each taken

14  electric service from Grant PUD for periods as long as five years, each has paid all

15  bills owed to the PUD, and each has substantial deposits on file with Grant PUD,

16  which protect Grant should any of the Plaintiffs default on their electric bills.

17  Currently, Plaintiffs all take service from Grant PUD under Rate Schedule 7, the

18  rate for "Large General" service. Collectively, Plaintiffs' facilities operate with an

19

20  [3] *See* Christensen Decl. Ex. 4, p. 5.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 3

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1  electrical capacity of 12.25 MW, and place an average load of approximately

2  11 MW on Grant, consuming approximately 8,000 MWh of electricity per month,

3  and paying approximately $2 million per year to Grant for electric service.[4]

4  **C.    Rate Schedule 17**

5         On March 29, 2018, Grant reported internally it had applications from 19

6  cryptocurrency businesses that would create 16.5 aMW of new electricity

7  demand.[5] Nonetheless, two days later, Grant publicly claimed it had received 109

8  "inquiries for service" from cryptocurrency "miners" and other high-tech

9  industries, that could purportedly increase Grant PUD's load by 2,000 MW.[6] But

10  Grant's "load forecasts are based on signed agreements," not mere inquiries, which

11  "do not materialize for a variety of reasons."[7] Although Grant Staff considered

12  "getting a list of real customers and dropping the queue to a realistic number,"[8] it

13

14

15

16  [4] *See* Declarations of Plaintiffs attached hereto.

17  [5] Christensen Decl. Ex. 5, GPUD_001682-001683.

18  [6] Christensen Decl. Ex. 6, GPUD_001684.

19  [7] Christensen Decl. Ex. 7, p. 24.

20  [8] Christensen Decl. Ex. 8, GPUD_001764.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 4

{03679240.DOCX;7 }

1   never did.  Instead, throughout the relevant period it claimed publicly that it faced

2   a 1,500-MW flood of cryptocurrency "miners."[9]

3        This supposed flood produced hysteria among Grant's "traditional"

4   customers. In comments filed with the Commission, they claimed, for example,

5   that cryptocurrency miners are "parasites" and the Commission should "make them

6   go away"[10] and that "many ratepayers dislike giving away our energy at cost to

7   large out of county users."[11] Politically powerful local interests like the Port of

8   Moses Lake urged the Commission to reserve Grant's power resources for

9   "traditional" and "long-term" customers, to force cryptocurrency to take "second

10  priority" to those customers,[12] and to impose punitive rates on cryptocurrency

11  businesses.[13]

12

13

14

15  [9] Christensen Decl. Ex. 3, p. 2.

16  [10] Christensen Decl. Ex. 10, GPUD_000115-000116.

17  [11] Christensen Decl. Ex. 9, GPUD_000114; *see also* Christensen Decl. Ex. 11,

18  GPUD_000158.

19  [12] Christensen Decl. Ex. 12, GPUD_000238-000239.

20  [13] Christensen Decl. Ex. 13, GPUD_000103.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 5

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1   Even as Grant PUD continued to hand out preferential favors to these

2   traditional customers,[14] it developed and adopted RS-17, which was designed to

3   force cryptocurrency businesses to "pay above their costs,"[15] to "provide economic

4   benefit to core customers,"[16] and to deny cryptocurrency businesses "access to low

5   cost power benefits from the Priest Rapids Project,"[17] the federally-licensed dam

6   that provides the lion's share of Grant PUD's power supply. At the same time,

7   Grant revised its interconnection policy, creating a queue system that "prioritized

8   traditional customers over all crypto customers"[18] (the "EI Queue"), so that

9   cryptocurrency businesses are moved "to the back of the line"[19] and cannot

10

11

12   _____

13   [14] Christensen Decl. Ex. 14, GPUD_000436 (email from Port of Royal Slope

      thanking Grant PUD for treating transmission construction cost as electric system

14

15   cost and prioritizing Port's project over other customer requests).

16   [15] Christensen Decl. Ex. 15, GPUD_001967.

17   [16] Christensen Decl. Ex. 16, GPUD_002988.

      [17] Christensen Decl. Ex. 17, GPUD_000167.

18
      [18] Christensen Decl. Ex. 18, GPUD_003372.
19
      [19] Christensen Decl. Ex. 19, GPUD_004441.
20

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 6

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1    interconnect with Grant "until all traditional customers are satisfied (which may

2    never occur)."[20]

3          Most utility rate schedules, including Grant PUD's, classify customers based

4    on the amount of power they consume and other factors directly related to the

5    utility's cost to serve that class of customers.[21] Unlike any other utility rate

6    schedule, RS-17 purports to create an "evolving industry" rate class based on the

7    supposed business risks of the customer class rather than the utility's cost to serve

8    that class. Specifically, RS-17 purports to classify Grant PUD's customers as

9    "Evolving Industry" based on a three-pronged test. Evaluation of the first prong,

10    "Concentration Risk," "would begin to occur when industry concentration of

11    existing and service request queue customer loads exceeds 5% of Grant PUD's

12    total load."[22] If the "concentration risk" threshold is met, the industry must meet

13    "one of two other criteria:"

14         1.     Regulatory Risk – Risk of detrimental changes to regulation with

15       the potential to render the industry inviable within a foreseeable time
        horizon.

16

17

---

18    [20] Christensen Decl. Ex. 18, GPUD_003372.

19    [21] Declaration of William J. Kemp at ¶¶ 3.10 – 3.12.

20    [22] Christensen Decl. Ex. 20, p. 1.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 7

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1
2
      2.      Business Risk – Potential for cessation or significant reduction of service due to a concentration of business risk, in an evolving or unproven industry, in the value of the customer's primary output.

3
4
5
RS-17 further purports that Grant Staff, not the Commission, will "[n]o less than annually" review the rate class to determine "if it is appropriate" for a "customer's industry" to move into or out of the class.

6
7
8
9
10
11
12
13
14
15
16
      Although Grant Staff recognized these criteria "are applicable to many if not all of our large customers to some degree,"[23] Grant from the outset specifically targeted cryptocurrency businesses. As early as October 2017, Grant Staff agreed to create a "Separate Rate Schedule" for "Crypto Currency."[24] A draft of a White Paper describing RS-17 from early April 2018, states that "Customers that derive a significant amount of their revenue stream from cryptocurrency mining will initially constitute most, if not all, of the members of this rate class."[25] The White Paper also claims that "District staff" will employ the risk tests specified in RS-17 "to existing and future customers for their inclusion in or exclusion from this class." But these tests are a sham:  a comment from one of the Rate's primary authors states, "[t]his hook is intended to keep the District from *appearing*

17
18
[23] Christensen Decl. Ex. 21, GPUD_003908.

19
[24] Christensen Decl. Ex. 22, GPUD_003061-003062.

20
[25] Christensen Decl. Ex. 23, p. 8.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 8

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1    *arbitrary by targeting only one industry*. Treating these industries as member of a

2    population of uses rather than individual targets (*which we are*) preserves the value

3    and defensibility of our local control to our traditional customers and regulatory

4    bodies alike."[26] Comments in the same document reveal that the 5%

5    "concentration" threshold was carefully formulated to "keep the focus on

6    cryptocurrency miners" and to exclude high-risk industries such as cannabis.[27]

7    Grant Staff recognized the difficulty of "perfecting" the definition of Evolving

8    Industry and the dubious legality of RS-17 but proceeded because it thought it

9    could "slow roll any legal challenges to the definition."[28]

10        In June 2018, nearly three months before the Commission adopted RS-17,

11    Grant Staff stated: "Mining of any kind will result in moving to [Evolving

12    Industry] rate."[29] In late June 2018, Grant Staff prepared a newspaper notice for its

13    July 10, 2018, meeting, stating that the Commission would consider RS-17, "which

14    applies to cryptocurrency mining."[30] This language was later reworded because

---

[26] *Id.*, p. 19 (emphasis added).

[27] *Id.*, p. 12.

[28] *See id.*, p. 2 (note "SF1").

[29] Christensen Decl. Ex. 26, GPUD_001724.

[30] Christensen Decl. Ex. 27, GPUD_002294.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 9

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1  "we don't want to imply that Rate Schedule 17 only applies to crypto."[31]

2  Nonetheless, in July 2018, Grant Staff stated: "Crypto-mining customers are

3  placed in that rate class."[32] In mid-August 2018, the Grant Staff member primarily

4  responsible for RS-17 was asked if "this rate is just targeted at cryptocurrency

5  folks." He responded, "Cryptocurrencies are the only industry that would currently

6  fall into the Evolving Industry rate class."[33]

7      The Commissioners adopted RS-17 on August 28, 2018. On the *same day,*

8  Grant Staff posted a press release stating: "At this time, all Grant customers in the

9  evolving industries profile are miners of cryptocurrency."[34] Of course, there was

10  no time for Grant Staff to conduct any of the analysis supposedly required by

11  RS-17,[35] let alone notify Plaintiffs or provide an opportunity to present evidence.

12      And Grant Staff never analyzed any other industry for inclusion in the

13  "Evolving Industry" class, although Grant Staff recognizes that many of its largest

---

[31] Christensen Decl. Ex. 28, GPUD_002442.

[32] Christensen Decl. Ex. 29, GPUD_000658.

[33] Christensen Decl. Ex. 30, GPUD_000655.

[34] Christensen Decl. Ex. 31, GPUD_002369-002371.

[35] *See* Kemp Decl. at ¶ 5.6 (noting that "Porter's Five Forces" analysis requires 15-30 person-weeks of effort).

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 10

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

customers fit the Evolving Industry criteria.[36] In fact, Grant Staff cited the REC Silicon plant – which was specifically identified as a serious credit risk to Grant because of a precipitous decline in prices for its product,[37] and which faces an "existential threat" from the current trade war with China[38] – as an example of the risks RS-17 is intended to address.[39] Yet Grant never considered including REC Silicon – or any of these other industries – in the "Evolving Industries" class.[40]

---

[36] Christensen Decl. Ex. 21, GPUD_003908; *see also* Christensen Decl. Ex. 33, GPUD_000104.

[37] Christensen Decl. Ex. 34, GPUD_002257; Ex. 35 GPUD_002350-002351 (noting that financing rating agencies are focused on risks from Grant's individual customers with more than 20 MW of load – REC Silicon, Microsoft, SGL Carbon Fiber, etc.).

[38] E. Merchant, *REC Silicon's Washington Plant Isn't Closing – Yet,* Greentech Media, (Sept. 26, 2018) (www.greentechmedia.com/articles/read/rec-silicon-washington-plant-isnt-closing-yet#gs.AFUVd9TR).

[39] Christensen Decl. Ex. 36, GPUD_004298.

[40] Christensen Decl. ¶¶ 8-9.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 11

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

RS-17 imposes rate increases averaging 39% per annum over three years beginning on April 1, 2019.[41] This is true despite the fact that, as Grant recently stated,[42] interest from cryptocurrency "miners" located in Grant County has fallen to just 313.5 MW, one-fifth of Grant's original projection,[43] and even this number is overstated.[44] This fundamentally undermines Grant's justification for the 300% rate increase, which is based on the risks of system expansion to meet new loads.[45] Nonetheless, despite unfulfilled promises to revisit the rate increase if conditions

---

[41] Kemp Decl. at ¶ 8.2.

[42] Paul Roberts, *After the Bitcoin Bust and a Local Bankruptcy, Douglas County Doubles Down on Blockchain,* Seattle Times, Jan. 11, 2019 (https://www.seattletimes.com/business/after-the-bitcoin-bust-and-a-local-bankruptcy-douglas-county-doubles-down-on-blockchain/).

[43] *See* Christensen Decl. Ex. 37.

[44] Grant identifies GW One, LLC, as having 100 MW in the queue for new service. That entity was "administratively dissolved" as of December 3, 2018. *See* https://ccfs.sos.wa.gov/#/BusinessSearch/BusinessInformation.

[45] Kemp Decl. at ¶ 6.6.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 12

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

change,[46] Grant threatens to increase Plaintiffs' rates exponentially beginning on April 1, 2019.

### III.    AUTHORITY AND ARGUMENT

**A.    The Preliminary Injunction Standard.**

A party can obtain a preliminary injunction by showing that (1) it is "likely to succeed on the merits," (2) it is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [its] favor," and (4) "an injunction is in the public interest." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citations omitted). Under the Ninth Circuit's "sliding scale" approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (citations omitted).

**B.    Plaintiffs Are Likely To Succeed On The Merits.**

**1.    RS-17 Is Illegally Discriminatory and Imposes Grossly Excessive Rates on Plaintiffs.**

One of the driving forces for utility regulation was discrimination by the early monopolistic utilities, which often sold to favored customers at low prices and charged rivals high prices, thus driving those rivals out of business. The non-

---

[46] Christensen Decl. Ex. 38, GPUD_001599.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 13

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700    fax 206 587 2308

{03679240.DOCX;7 }

1    discrimination principle arose to combat this form of abuse.[47] RS-17 is a

2    throwback to exactly this kind of discrimination – it was, in Commissioner Bernd's

3    words, intended to "t[ell] them" – disfavored cryptocurrency businesses – "to

4    leave"[48] – and to favor Grant's traditional "core customers."[49] Further, Grant's EI

5    Queue is, on its face, discriminatory since it moves cryptocurrency to the back of

6    the bus, behind any "traditional" customer, in the queue for service from Grant.

7         But state law requires Grant PUD to formulate non-discriminatory rates.

8    RCW 54.24.080(1) states that Grant's "commission … shall be required to

9    establish" rates for electric energy that are "fair" and "nondiscriminatory."[50]

10   Hence, Grant PUD must ensure that all customers within a rate class "are treated

11   equally" and that there is a "reasonable basis" for placing customers in different

12   classes based on cost of service. *See Silver Shores Mobile Home Park, Inc. v. City*

13

14   [47] Kemp Declaration at ¶ 3.5.

15   [48] Christensen Decl. Ex. 3, p. 2 ("Three hundred percent is a huge increase. These

16   people need to be able to operate their businesses with some assurance that they

17   won't have to write off millions because we told them to leave").

18   [49] *Id.*, p. 3.

19   [50] The non-discrimination requirement applies in all cases except for rates designed

20   to assist low-income customers. *See* RCW 54.24.080 (2)-(3); RCW 74.38.070.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 14

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1  *of Everett*, 87 Wn. 2d 618, 623 (Wash. 1976). Different rates can be charged to

2  different customer classes only if "scientific statistical analysis" shows substantial

3  differences in the costs of serving those different customer groups. *Lincoln Shiloh*

4  *Assocs., Ltd. v. Mukilteo Water Dist.*, 45 Wn. App. 123, 129-30 (Wash. Ct. App.

5  1986). Further, a PUD "must establish its rates at the lowest possible point."

6  *Carstens v. PUD No. 1 of Lincoln Cnty.*, 8 Wn. 2d 136, 151 (Wash. 1941).

7  Accordingly, rates are illegal if "they are excessive and disproportionate to the

8  services rendered," *Lincoln*, 45 Wn. App. at 12, and are not designed to "cover

9  *actual costs* to be incurred by the PUD" in providing service. *Wash. Manufactured*

10  *Hous. Ass'n v. PUD No. 3 of Mason Cnty.*, 124 Wn. 2d 381, 386 (Wash. 1994).

11      Likewise, because Grant PUD holds a federal hydropower license,[51] Section

12  20 of the Federal Power Act ("FPA") also bars Grant from imposing

13  discriminatory rates. Section 20 requires that "the rates charged and the service

14  rendered" by Grant "shall be reasonable, nondiscriminatory, and just to the

15

16

17

18

---

[51] Grant PUD holds Federal Energy Regulatory Commission ("FERC")

19

hydropower license No. No. 2114 for the Priest Rapids Project.

20

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 15

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700    fax 206 587 2308

{03679240.DOCX;7 }

1    customer and all unreasonable, discriminatory and unjust rates or services are

2    prohibited and declared to be unlawful." 16 U.S.C. § 813. [52]

3         RS-17 violates each of these requirements. First, it permits *Grant Staff* to

4    establish the rates paid by any industry classified as "evolving," and is therefore

---

[52] Section 20 applies because power from the Priest Rapids Project is sold in

several Northwest states and therefore "enters into interstate commerce." *See*

*Kootenai Elec. Coop., Inc. v. FERC*, 192 F.3d 144 (D.C. Cir. 1999). Because

Grant's Commission exercises authority over Grant's rates, FERC lacks authority

to regulate its rates under Section 20, *Yakama Nation v. PUD No. 2 of Grant Cnty.*,

103 FERC ¶ 61,073 at P 11 & n. 13 (2003), and the obligations of Section 20

therefore fall directly on Grant's Commission. FPA Section 20 assigns this Court

jurisdiction over Plaintiffs' claim by according Plaintiffs the "same rights of

hearing … and review" as are provided for reviewing railroad rates under subtitle

IV of Title 49 (the Interstate Commerce Act "ICA"). Subtitle IV of the ICA

provides an action for damages, including attorneys' fees, in this Court by shippers

who are damaged by a rail carrier's excessive rates. 49 U.S.C. § 11704; *see ICC v.*

*Atl. Coast Line R.R. Co.*, 383 U.S. 576 (1966). Further, 28 U.S.C. § 1331

"independently grant[s]" this Court jurisdiction over the claim. *Verizon Md., Inc. v.*

*Public Serv. Comm'n*, 535 U.S. 635, 641-43 (2002).

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 16

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1    contrary to RCW 54.24.080(1), which mandates that the *"commission … shall be*

2    required"* to establish Grant's rates.  The improper delegation here is particularly

3    egregious because no "procedural safeguards exist to control arbitrary

4    administrative action and any administrative abuse of discretionary power." *Barry*

5    *& Barry, Inc. v. State Dep't Motor Veh.*, 81 Wn. 2d. 155, 159 (Wash. 1972).

6            Second, RS-17 fails to apply the same rates to customers that are

7    indistinguishable on a cost-of-service basis.  Grant's large data center customers

8    are indistinguishable from Plaintiffs in terms of the costs Grant incurs to serve

9    them,[53] yet RS-17 singles out cryptocurrency businesses.  Similarly, Grant fails to

10   classify its many customers who share Plaintiffs' risk characteristics as

11   "evolving,"[54] even though Grant Staff recognized that many of its large customers

12   qualify as evolving under the standards set forth in RS-17.[55] Hence, Grant fails to

13   treat similarly-situated customers in the same way on two different scores. *See*

14   *Mass.  Mun. Wholesale Elec. Co. v. City of Springfield*, 726 N.E.2d 973, 977

15   (Mass. App. Ct. 2000) (rate discrimination is impermissible for "consumers who

16   receive the same service under similar conditions").

17   _____

18   [53] Kemp Declaration at ¶ 4.4.

19   [54] *Id.* at ¶¶  5.3 – 5.4.

20   [55] *Supra* n. 36-37, 39-40.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 17

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1    Third, Rate Schedule 17 does not rely on "scientific statistical analysis" to

2  identify rate classes but on wholly-subjective Staff determinations about what is

3  "foreseeable," "potential," "significant" and "meaningful", etc., which have no

4  place in sound utility practice.[56]

5    Fourth, RS-17 is not, as Grant repeatedly admits,[57] cost-based. On the

6  contrary, Grant concedes that the cost of service for RS-17 is $0.0281/kwh, but,

7  under RS-17, Plaintiffs will pay nearly triple this amount.[58] RS-17 includes four

8  elements, in addition to cost of service, that unjustifiably drive up the rates charged

9  to Plaintiffs and demonstrate egregious monopoly abuse:

10    (i)    RS-17 imposes on Plaintiffs a 31% "premium" that is simply a direct

11  transfer of wealth from Plaintiffs to Grant's favored "traditional" customers.[59]

12

13

---

14  [56] Kemp Decl. at ¶ 5.5.

15  [57] Christensen Decl. Ex. 39, GPUD_000520 (RS-17 "obliges evolving industry

16  customers to pay more than the cost to supply their power").

17  [58] Kemp Decl. at ¶¶ 6.2 – 6.3.

18  [59] Kemp Decl. at ¶ 5.7; Christensen Decl. Ex. 39, GPUD_000520 (RS-17 requires

19  cryptocurrency customers to "subsidize … below cost rates for residential,

20  irrigation, and small and medium-sized business customers").

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 18

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1    (ii)    RS-17 includes an "adder" that assumes cryptocurrency customers

2   will drive the need for a significant transmission expansion beginning in 2021

3   rather than 2026.  The adder is unsupportable because: (i) the assumption that huge

4   amounts of new cryptocurrency load will appear in Grant County is invalid; (ii) the

5   adder improperly attempts to force "Evolving Industry" customers to pay the entire

6   cost of transmission facilities that benefit all Grant customers; and (iii) the adder

7   uses an invalid options-based methodology that is unrelated to Grant's cost of

8   service and (even if Grant's cryptocurrency growth assumptions were valid) vastly

9   overstates the actual impact of transmission expansion on Grant PUD.[60]

10    (iii)    RS-17 includes a distribution "surcharge" based on the claim that

11   cryptocurrency businesses put extra wear on Grant's distribution system. But Grant

12   admits that it has "not experienced residential equipment failure due to

13   cryptocurrency mining."[61] Further, most Plaintiffs do not use Grant's distribution

14   system or have already paid the costs of any distribution upgrades necessary to

15

16

---

17   [60] Kemp. Decl. at ¶¶ 6.6 – 6.7; Christensen Decl. Ex. 41, GPUD_003259-003260

18   (email conceding that if the 3% transmission overload factor used for transmission

19   adder is changed, the cost of transmission is spread widely across all rate classes).

20   [61] Christensen Decl. Ex. 42, GPUD_000076.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 19

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1  serve them, so it is fundamentally unfair to impose this element of the RS-17

2  charge on Plaintiffs.[62]

3      (iv)    RS-17 includes an "overall put" that is both redundant and no longer

4  justified because it is based on "concentration risk" that no longer exists.[63]

5      Fifth, RS-17 improperly ascribes costs to Plaintiffs.  Because Plaintiffs

6  became Grant PUD customers when Grant had ample capacity, they are not

7  responsible for the costs supposedly driving RS-17. On the contrary,

8  Commissioner Bernd admitted that "[n]one of the [cryptocurrency businesses] who

9  are already here are causing harm to our system"[64] and Commissioner Schaapman

10 agreed that "cryptocurrency mining operations that have been operating in the

11 county several years don't present the same risk as new, incoming cryptos who

12 wouldn't have the proven ability to pay rates longer-term."[65]

13     Sixth, RS-17 is arbitrary because it violates the well-accepted utility

14 ratemaking principles of gradualism, avoidance of rate shock, and predictability.[66]

15

16 [62] Kemp Decl. at ¶ 6.8.

17 [63] Kemp Decl. at ¶¶ 6.9 – 6.13.

18 [64] Christensen Decl. Ex. 3, p. 2.

19 [65] *Id.*

20 [66] Kemp Decl. at ¶¶ 4.3 – 4.8.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 20

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700    fax 206 587 2308

{03679240.DOCX;7 }

These principles have been adopted as Grant PUD policy in Resolution No. 8768,[67] which commits Grant to rates that increase no more than 2% per year, to specific limits on rate shock, to cost-of-service ratemaking, and to ensure that cross-subsidies between rate classes are no more than +15%/-20%.[68] As Grant Staff recognizes,[69] RS-17 blatantly violates each of these requirements.[70] Grant's failure to follow its own policies in adopting RS-17 renders the rate arbitrary and capricious. *Rahman v. Napolitano*, 814 F. Supp. 2d 1098, 1103 (W.D. Wash. 2011); *J.L. Storedahl & Sons, Inc. v. Clark Cty.*, 143 Wn. App. 920, 932 (2008).[71]

### 2.   RS-17 Violates Plaintiffs' Rights to Due Process.

#### a.   RS-17 Deprives Plaintiffs of Constitutionally Protected Interests.

Plaintiffs are threatened with the loss of at least two constitutionally protected property interests. First, RS-17's crippling rate increases will destroy the

---

[67] Christensen Decl. Ex. 43.

[68] Christensen Decl. Ex. 44, GPUD_01644-001649.

[69] Christensen Decl. Ex. 45, GPUD_003488 (Grant Staff email recognizing that adoption of RS-17 would require Resolution No. 8768 to be changed).

[70] Kemp Decl. at ¶ 4.13.

[71] Christensen Decl. Ex. 46, GPUD_004420.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 21

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1  value of tens of millions of dollars Plaintiffs have invested in Grant County.

2  Second, RS-17 violates Plaintiffs' "due process right … in nonarbitrary rates."

3  *Earle M. Jorgenson Co. v. City of Seattle*, 99 Wn. 2d 861, 868 (Wash. 1983).

4  **b.    RS-17 Lacks Even Basic, Minimal Procedural Safeguards.**

5  "Government may not deprive a person" of a property interest "without

6  providing notice and an opportunity to respond, or, in other words, the opportunity

7  to present reasons not to proceed with the deprivation and have them considered."

8  *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017) (internal quotation

9  marks omitted); *Southwick, Inc. v. Wash. State*, 200 Wn. App. 890, 897 (Wash. Ct.

10  App. 2017); *see also Matter of Troupe*, 4 Wn. App. 2d 715, 730-31 (Wash. Ct.

11  App. 2018) ("fundamental part" of due process is being heard "in a meaningful

12  manner").  Even before the Commission officially adopted RS-17, Grant Staff had

13  summarily determined to classify cryptocurrency as an "Evolving Industry." There

14  was no hearing, so Plaintiffs had no notice, no opportunity to be heard, no

15  opportunity to present contrary evidence, and no avenue to appeal to Grant's

16  Commission. Grant therefore violated Plaintiffs' due process rights. *See Sheep

17  Mountain Cattle Co. v. State*, 45 Wn. App. 427, 431-32 (Wash. Ct. App. 1986);

18  *Olympic Forest Prods., Inc. v. Chaussee Corp.*, 82 Wn. 2d 418, 434 (Wash. 1973).

19  The depth of the due process violation is underscored by the fact that, if

20  Grant Staff had actually considered the evidence, Plaintiffs could not have been

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 22

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1    classified as "evolving industry." *See Mathews v. Eldridge*, 424 U.S. 319, 344

2    (1976) (due process requires procedures that minimize "risk of error"). There is

3    good evidence already in Grant's hands that cryptocurrency does not, and will

4    never, exceed the 5% "concentration risk" threshold required under RS-17.[72] In

5    fact, Grant itself projects its 2018 cryptocurrency load will be 20.05 average MW

6    ("aMW"), a number that has likely fallen further[73] and that is well below the 5%

7    (30.5 aMW) "concentration risk" threshold.[74] Further, because cryptocurrency has

8    been placed at the end of the EI Queue, it will be "years" before any new

9    cryptocurrency business is served by Grant,[75] and it "may never occur."[76]

10

11    [72] Kemp Decl. at ¶¶ 6.11 – 6.13.

12    [73] Christensen Decl. Ex. 47, GPUD_000618-000619.

13    [74] In 2018, Grant's average load was 603 average MW ("aMW"). Christensen

14    Decl. Ex. 48, GPUD_000596. Hence, the 5% threshold is 30.5 aMW. The actual

15    load is now even lower than the predicted 20.05 aMW because one cryptocurrency

16    firm, with a capacity of 2 MW, left Grant County after RS-17 was enacted,

17    Christensen Decl. Ex. 49 GPUD_000331-000332, and a second is bankrupt. *See*

18    Roberts, *supra* note 42; Kemp Decl. at ¶ 6.13.

19    [75] Christensen Decl. Ex. 50, GPUD_003866.

20    [76] Christensen Decl. Ex. 18, GPUD_003372. *See also* Kemp Decl. at ¶ 6.12.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 23

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700    fax 206 587 2308

1    There is also good evidence in Grant's possession demonstrating that

2  cryptocurrency is not threatened with inviability and that regulators around the

3  world are moving to adapt existing regulatory structures to accommodate

4  cryptocurrency, not to eliminate it.[77]  This evidence demonstrates that

5  cryptocurrency does not meet either the "regulatory risk" or "business risk" tests of

6  RS-17.  But Grant Staff never considered any of this evidence, and instead

7  marched to the predetermined conclusion that cryptocurrency businesses must be

8  subject to RS-17.

9    Grant Staff's determination is plainly quasi-judicial because, to determine

10  whether Plaintiffs can properly be classified as "evolving industry" under the terms

11  of RS-17, Grant Staff should have gathered and weighed the evidence, applying

12  the tests and methods specified in RS-17.  This is a classic example of a quasi-

13  judicial administrative process.  *See Duffy v. Riveland*, 98 F.3d 447, 458 (9th Cir.

14  1996) (citing *Yaw v. Walla Walla Sch. Dist.*, 106 Wn. 2d 408, 414 (Wash. 1986)).

15  Plaintiffs were therefore entitled to basic due process protections required for

16  quasi-judicial proceedings, including rights of notice, to present contrary evidence,

17

18  ———————————————

19  [77] *E.g.*, Christensen Decl. Ex. 52, GPUD_002690 (concluding that cryptocurrencies

20  are "unlikely to disappear completely").

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 24

{03679240.DOCX;7 }

1    and to appeal. *See, e.g.*, *Morgan v. U.S.*, 304 U.S. 1, 18-19 (1938); *Willner v.*

2    *Comm. on Character & Fitness*, 373 U.S. 96, 105-06 (1963).

3        Further, even if Grant's actions were purely legislative, heightened due

4    process protection would be required because, "[w]hen one person, or relatively

5    few people, are exceptionally affected by a decision on individual grounds, then

6    such persons may be entitled to basic due process rights, including individual

7    notice," especially if those persons are "specifically targeted" by the legislative act.

8    *Holbrook, Inc. v. Clark Cnty.*, 112 Wn. App. 354, 365-66 (Wash. Ct. App. 2002);

9    *see also Harris v. Cnty. of Riverside*, 904 F.2d 497, 503 (9th Cir. 1990); *Pac. Nw.*

10   *Venison Producers v. Smitch*, 1992 WL 613294, at *5 (W.D. Wash. Sept. 2, 1992)

11   **3.    RS-17 Violates the Privileges and Immunities Clause of the Washington Constitution.**

12       Article 1, § 12 of the Washington State Constitution prohibits "special

13   interest legislation—laws that confer a benefit on a privileged or influential

14   minority." *Schroeder v. Weighall*, 179 Wn. 2d 566, 571-72 (Wash. 2014); *Grant*

15   *Cnty. Fire Prot. Dist. No. 5 v. City of Moses Lake*, 145 Wn. 2d 702, 731 (Wash.

16   2002) (*Grant County I*).

17       RS-17 threatens at least two of Plaintiffs' privileges protected under Art. 1,

18   Section 12, the right to carry on a business and the right to nondiscriminatory

19   utility rates. *See State v. Vance*, 29 Wn. 435, 458 (Wash. 1902) (right to carry on

20

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 25

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1   business); *Faxe v. City of Grandview*, 48 Wn. 2d 342, 347 (Wash. 1956) (right to

2   non-discriminatory utility rates); *Geneva Water Corp. v. City of Bellingham*, 12

3   Wn. App. 856, 863 (Wash. Ct. App. 1975) (same).

4          When the government grants "an exception from a regulatory law that

5   benefits certain business at the expense of others," as Grant has plainly done here,

6   it violates Art. 1, Sec. 12. *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State*

7   *Liquor Control Bd.*, 182 Wn. 2d 342, 360 (Wash. 2015). RS-17 was explicitly

8   designed to extract a 31% premium from Plaintiffs and transfer that directly to

9   Grant's favored customer classes. Article 1, § 12 prohibits Grant from burdening

10  "particular classes of business, lawful in themselves, for the enrichment of another

11  class." *Ralph v. City of Wenatchee*, 34 Wn. 2d 638, 641-43 (Wash. 1949).

12         For the reasons discussed above, there is no "reasonable ground" for

13  subjecting Plaintiffs to the crippling rate increases of RS-17 while exempting

14  similarly situated politically favored Grant PUD customers. "The article I, section

15  12 reasonable ground test is more exacting than rational basis review," and the

16  Court must "scrutinize the legislative distinction to determine whether it *in*

17  *fact* serves the legislature's stated goal." *Schroeder*, 179 Wn. 2d at 574 (law

18  unconstitutional where no factual support that it in fact served its stated goal). "A

19  classification, to be legal and valid, must rest on **real and substantial differences**

20  bearing a **natural, reasonable, and just relation to the subject-matter** of the act

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 26

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

1    in respect to which the classification is made." *State ex rel. Bacich v. Huse*, 187

2    Wn. 75, 83-84 (Wash. 1936) (emphasis added), *overruled on other grounds by*

3    *Puget Sound Gillnetters Ass'n v. Moos*, 92 Wn. 2d 939 (1979). These distinctions

4    may not "rest upon a mere fortuitous characteristic or quality of persons, or upon

5    personal designation," and the "classification cannot be an arbitrary selection." *Id.*

6    **C.    Plaintiffs Face an Immediate Threat of Harm.**

7        The rate increases imposed by RS-17, which Grant itself describes as

8    "exponential"[78] and "huge,"[79] and which will result in rate increases on the order

9    of 300-400% on their most important input, threaten Plaintiffs with bankruptcy.[80]

10    The threat is immediate because RS-17 will impose a series of three rate increases,

11    beginning on April 1, 2019, that average 39% annually.[81] The threat of bankruptcy

12    is sufficient to establish irreparable injury because, if Plaintiffs are forced into

13    bankruptcy, "a favorable final judgment might well be useless." *Doran v. Salem*

14    *Inn, Inc.*, 422 U.S. 922, 932 (1975); *see also Am. Passage Media Corp. v. Cass*

15    *Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985).

16    _____

17    [78] Christensen Decl. Ex. 2, GPUD_004164.

18    [79] Christensen Decl. Ex. 3, p. 2.

19    [80] See attached Declarations of Plaintiffs.

20    [81] Kemp Decl. at ¶ 8.2, Christensen Decl. Ex. 1, GPUD_000522-000523.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 27

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

Further, the denial of Plaintiffs' rights to due process "unquestionably constitutes irreparable injury," and "it follows inexorably" from the demonstrated violation of Plaintiffs' constitutional rights that Plaintiffs "have also carried their burden as to irreparable harm." *Hernandez*, 872 F.3d at 994–95 (citations omitted).

**D.    The Equities Favor the Plaintiffs.**

In balancing the equities, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017). Here, the equities weigh strongly in favor of Plaintiffs. The extreme rate increases required by RS-17 threaten immediate financial devastation for Plaintiffs and the failure to accord any process to Plaintiffs constitutes an ongoing violation of their constitutional rights.

On the other hand, two Commissioners conceded that Plaintiffs, all existing cryptocurrency businesses, are not imposing burdens on Grant. Further, the supposed 1,500-MW "rush" of cryptocurrency businesses to Grant County has now dissipated and, in any event, because of the EI Queue policy (which Plaintiffs do not seek to enjoin at this juncture), it will be years, if ever, before any new cryptocurrency business can take service from Grant PUD.

Further, many alternatives to RS-17 are available for Grant to mitigate the risks supposedly justifying RS-17. For example, Plaintiffs have the ability to shut

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 28

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1    down during peak demand periods, and Grant can therefore enter into "demand

2    management" contracts with Plaintiffs or others to reduce loads during peak

3    periods, which would eliminate the need for new transmission facilities

4    purportedly driving RS-17. Grant failed to consider these, or any other "non-wires"

5    alternatives, to transmission construction.[82]

6       Likewise, although the substantial deposits already paid by Plaintiffs protect

7    Grant PUD from the default risks driving RS-17, Grant considered neither whether

8    those deposits adequately protect Grant nor any other risk management

9    arrangements as an alternative to RS-17's massive rate increases.[83]

10      Hence, Grant will not be harmed if RS-17 is enjoined. On the contrary,

11    RS-17 would force Plaintiffs to terminate their businesses in Grant County,

12    eliminating annual revenues to Grant of approximately $2 million, and forcing

13    other Grant ratepayers to bear the burden of this lost revenue.

14   **E.**     **Granting Plaintiffs' Request Will Further the Public Interest.**

15      The public interest would also be served by granting a preliminary

16    injunction. First, "public interest concerns are implicated when a constitutional

17    right has been violated, because all citizens have a stake in upholding the

18

---

19   [82] Kemp Decl. at ¶¶ 4.4, 7.2.

20   [83] *See* Kemp Decl. at ¶ 7.3.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 29

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

1  Constitution." *Hernandez*, 872 F.3d at 996 (citation omitted). Second, as

2  demonstrated above, an injunction will prevent Grant PUD's ratepayers from

3  having to bear the burden of lost revenues that would occur if RS-17 forces

4  Plaintiffs to shutter their businesses in Grant County, and will keep in place rates

5  that have allowed Grant to maintain sound financial health for many years.[84] Third,

6  "having government officials act in accordance with law … invokes a public

7  interest of the highest order," *B.E. v. Teeter*, 2016 WL 3033500, at *6 (W.D.

8  Wash. May 27, 2016) (internal quotation marks omitted), and an injunction is in

9  the public interest here because it will stop Grant's violations of both RCW

10  54.16.080 and Section 20 of the FPA.

## IV.    CONCLUSION

12      For the reasons discussed above, Plaintiffs respectfully request the Court to

13  grant a preliminary injunction barring Grant PUD from imposing any rate increases

14  under RS-17 until final resolution of this litigation.

---

[84] *See* Christensen Decl. Ex. 7, pp. 36-38.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 30

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

DATED this 15th day of February, 2019.

CAIRNCROSS & HEMPELMANN, P.S.

/s/ *Eric L. Christensen*
Eric L. Christensen WSBA No. 27934
E-mail:  echristensen@cairncross.com
Jonathan D. Tebbs, WSBA No. 53861
E-mail:  jtebbs@cairncross.com
524 Second Avenue, Suite 500
Seattle, WA  98104-2323
Telephone: (206) 587-0700
Facsimile: (206) 587-2308
Attorneys for Plaintiffs

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 31

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }

**<u>Certificate of Service</u>**

I, Eric L. Christensen, certify under penalty of perjury of the laws of the State of Washington that on February 15, 2019, I electronically filed this document entitled PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION and the supporting declarations and exhibits using the CM/ECF system which will send notification of such filing to the following persons:

***Attorneys for Defendants***

Malcolm McLellan, WSBA #23346
Dale Johnson, WSBA #26629
Van Ness Feldman
719 Second Avenue, Suite 1150
Seattle, WA  98104-1700
T:  206.623.9372 / F:  206.623.4986
E: mcm@vnf.com
E: dnj@vnf.com
Assistant:  agales@vnf.com
Assistant:  ack@vnf.com

DATED this 15th day of February, 2019, at Seattle, Washington.

/s/ *Eric L. Christensen*
Eric L. Christensen, Attorney for Plaintiffs
CAIRNCROSS & HEMPELMANN, P.S.
524 Second Avenue, Suite 500
Seattle, WA  98104-2323
Telephone: (206) 254-4451
Facsimile: (206) 587-2308
E-mail: echristensen@cairncross.com

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 32

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03679240.DOCX;7 }