1    DALE N. JOHNSON
2    MALCOLM C. McLELLAN
     VAN NESS FELDMAN LLP
3    719 SECOND AVENUE, SUITE 1150
     SEATTLE, WA 98126
4    T: 206-623-9372
5

6

7

8                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF WASHINGTON
9

10   BLOCKTREE PROPERTIES, LLC, a
     Washington limited liability company;
11   CORSAIR INVESTMENTS WA, LLC,          No. 2:18-cv-00390-RMP
12   a Washington limited liability company;
     CYTLINE, LLC, a Delaware limited       **DEFENDANTS'**
13   liability company; 509 MINE, LLC, a    **MEMORANDUM IN**
     Washington limited liability company;  **OPPOSITION TO**
14   MIM INVESTORS, LLC, a Washington       **PLAINTIFFS' MOTION FOR**
15   limited liability company; MINERS      **PRELIMINARY**
     UNITED, LLC, a Washington limited      **INJUNCTION**
16   liability company; TELCO 214
17   WHOLESALE SOFTWARE, INC., a            NOTED FOR MARCH 19, 2019
     Washington limited liability company;
18   MARK VARGAS, an individual; and,
19   WEHASH TECHNOLOGY, LLP, a
     Washington limited liability company,
20

21                          Plaintiffs,
22
             v.
23

24   PUBLIC UTILITY DISTRICT NO. 2
     OF GRANT COUNTY,
25

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - i



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

1   WASHINGTON, a Washington
    municipal corporation; TERRY
2   BREWER, individually and in his
    official capacity; BOB BERND,
3   individually and in his official capacity;
    DALE WALKER, individually and in
4   his official capacity; TOM FLINT,
    individually and in his official capacity;
5   LARRY SCHAAPMAN, individually
    and in his official capacity; and DOES
6   1-10, managers and employees of Grant
    County PUD, individually and in their
7   official capacities,
8
9
                                        Defendants.
10

11              **TABLE OF CONTENTS**
12
13  I.   INTRODUCTION ............................................................. 1

14  II.  FACTUAL BACKGROUND ............................................ 3
15       A.  The District Serves the Electricity Needs of Grant County
             Customers. .......................................................... 3
16       B.  The Flood of New Service Requests Presented by the
             Cryptocurrency Industry was Unprecedented. .................... 4
17
18       C.  The Cryptocurrency Industry's Characteristics are Different from
             other Load the District Serves. ................................... 5
19       D.  The Evolving Industry Customer Class Resulted from Painstaking
20           Analysis. ............................................................ 5
21       E.  Plaintiffs Received Extensive Opportunity for Public Comment. ..... 7

22  III. ARGUMENT ................................................................. 10

23       A.  Preliminary Injunction is an Exceptional Remedy. ............... 10
24       B.  Plaintiffs are Not Likely to Prevail on the Merits. .............. 11
25           1.   The Rate Schedule 17 rates are reasonable and lawful. ........... 11

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - ii

**Van Ness Feldman** LLP

719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

a. The District has the full and exclusive authority to set rates and its decisions are entitled to deference by this Court. ..................................................... 11

b. The Commission's decisions are not arbitrary and capricious. ..................................................... 13

c. The EI Customer Class established via Rate Schedule 17 is not discriminatory. ..................................................... 15

d. The rates established under Rate Schedule 17 are based on reasonable analysis and decision making. ......... 17

e. Plaintiffs will not prevail on their Federal Power Act claim. ..................................................... 20

2. Plaintiffs will not succeed on their claim under the Due Process Clause of the United States Constitution. .................... 20

a. Plaintiffs do not have a constitutionally protected property interest in their current electricity rate. .............. 21

b. Plaintiffs were afforded ample opportunities to make their views known. ..................................................... 21

3. Plaintiffs will not prevail on their claim under Article I, Section 12 of the Washington Constitution. ............................. 23

C. Any Harm to Plaintiffs is Not Irreparable and Imminent. ................ 25

D. The Equities Weigh in Favor of the District. ................................... 26

E. A Preliminary Injunction is Not in the Public Interest. .................... 27

F. Plaintiffs Must Provide Security if a Preliminary Injunction is Granted. ..................................................... 28

IV. CONCLUSION ..................................................... 29

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - iii



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

# <u>TABLE OF AUTHORITIES</u>

## <u>*Cases*</u>

*Ace Fireworks Co. v. City of Tacoma,*
    76 Wash.2d 207 (1969) ................................................................ 14

*Barrie v. Kitsap Cy. Boundary Review Bd.,*
    97 Wash.2d 232 (1982) ................................................................ 14

*Brewster v. Bd. of Educ. Of Lynwood Unified Sch. Dist.,*
    149 F.3d 971 (9th Cir. 1998) ....................................................... 21

*City of Tacoma v. Taxpayers of City of Tacoma,*
    108 Wash.2d 679 (1987) .............................................................. 12

*Colorado Interstate Gas Co. v. Fed. Power Comm'n,*
    324 U.S. 581 (1945) ..................................................................... 15

*Diaz v. Brewer,*
    656 F.3d 1008 (9th Cir. 2011) ..................................................... 28

*Dorsten v. Port of Skagit Cty.,*
    32 Wash. App. 785 (1982) ........................................................... 14

*Dymo Indus., Inc. v. Tapeprinter, Inc.,*
    326 F.2d 141 (9th Cir.1964) ........................................................ 11

*Enyart v. Nat'l Conf. of Bar Exam'rs Inc.,*
    630 F.3d 1153 (9th Cir. 2011) ..................................................... 25

*Friends of Columbia Gorge, Inc. v. Wash. State Forest Practices Appeals Bd.,*
    129 Wash. App. 35 (2005) ........................................................... 14

*Geneva Water Corp. v. City of Bellingham,*
    12 Wash. App. 856 (1975) ........................................................... 24

*Gilbert v. Homar,*
    520 U.S. 924 (1997) ..................................................................... 21

*Greenen v. Wash. State Bd. of Accountancy,*
    126 Wash. App. 824 (2005) ......................................................... 13

*Hillis Homes, Inc. v. Public Util. Dist. 1,*
    105 Wash.2d 288 (1986) .............................................................. 12

**Van Ness Feldman** LLP

719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

*Idaho Rivers United v. United States Army Corps of Engineers,*
    156 F.Supp.3d 1252 (W.D. Wash. 2015) ............................................. 10

*In re Disciplinary Proceeding Against Brown,*
    94 Wash. App. 7 (1999) ..................................................................... 13

*Irvin Water Dist. No. 6 v. Jackson P'ship,*
    109 Wash. App. 113 (2001) ............................................................... 12

*Isla Verde Int'l Holdings, Inc. v. City of Camas,*
    146 Wash.2d 740 (2002) .................................................................... 14

*Jeffers v. City of Seattle,*
    23 Wash. App. 301 (1979) ................................................................. 23

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League,*
    634 F.2d 1197 (9th Cir. 1980) ........................................................... 25

*Lincoln Shiloh Assocs., Ltd. v. Mukilteo Water Dist.,*
    45 Wash. App. 123 (1986) ................................................................. 18

*Mazurek v. Armstrong,*
    520 U.S. 972 (1997) .......................................................................... 10

*Murray v. Shanks,*
    27 Wash. App. 363 (1980) ................................................................. 23

*People's Org. for Wash. Energy Res. v. Utils. & Transp. Comm'n,*
    104 Wash.2d 798 (1985) .............................................................. 13, 22

*Pub. Util. Comm'n of State of Cal. v. United States,*
    356 F.2d 236 (9th Cir. 1966) ....................................................... 14, 22

*Pub. Util. District No. 2 of Pacific Cty. v. Comcast of Wash. IV, Inc.,*
    184 Wash. App 24 (2015) ............................................................ 12, 13

*Puget Sound Gillnetters Ass'n v. Moos,*
    92 Wash. 2d 939 (1979) .................................................................... 24

*Rios v. Dep't of Labor & Indus.,*
    145 Wash.2d 483 (2002) .................................................................... 13

*State ex rel. Bacich v. Huse,*
    187 Wash. 75 (1936) ......................................................................... 24

*State ex rel. Rosenberg v. Grand Coulee Dam Sch. Dist. No. 301 J,*
    85 Wash.2d 556 (1975) ..................................................................... 14

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - v

**Van Ness
Feldman** LLP

719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

*Teter v. Clark Cty.*,
  104 Wash.2d 227 (1985) ............................................................ 14, 19

*Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*,
  149 Wash.2d 17 (2003) ................................................................ 13

*Wash. Manufactured Hous. Ass'n v. Pub. Util. District No. 3 of Mason Cty*,
  124 Wash.2d 381 (1994) ............................................................. 12

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982) ..................................................................... 27

*Winter v. Nat. Res. Def. Council*,
  555 U.S. 7, 24 (2008) .................................................................. 27

*Wright v. Cent. Kentucky Nat. Gas Co.*,
  297 U.S. 537 (1936) ..................................................................... 21


## *Statutes*

RCW 54.12.010 ..................................................................................... 1

RCW 54.16.040 ........................................................................... passim

RCW 54.24.080 .................................................................................. 17

RCW 54.24.080(1) ........................................................... 1, 11, 13, 26


## *Other Authorities*

16 U.S.C. § 813 .................................................................................. 11

Article I, §12 ........................................................................... 24, 25

*The Yakama Nation v. Public Util. Dist. No. 2 of Grant Cty., WA*,
  Project No. 2114-106, Order on Complaint 2002 WL 31990298 (2002) ..... 20

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - vi

**Van Ness Feldman** LLP

719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Defendants, Public Utility District No. 2 of Grant County, Washington (the "**District**") and Terry Brewer, Bob Bernd, Dale Walker, Tom Flint, and Larry Schaapman (collectively, the "**Commissioners**"), by and through their undersigned counsel, respectfully request that the Court deny Plaintiffs' Motion for Preliminary Injunction ("**Motion**").

## I.    <u>INTRODUCTION</u>

The Plaintiffs are large consumers of electric power seeking to avoid an increase in their electricity rates.  They are frustrated with the outcome of an approximately year-long process that resulted in the establishment of a new rate class, which includes Plaintiffs, and the setting of rates for that new class that will take effect April 1, 2019.  The District is governed by five elected Commissioners that, as a body (the "**Commission**"), have the exclusive authority and responsibility to establish the rates the District charges for electric service. Wash. Rev. Code ("**RCW**") 54.12.010, 54.16.040 and RCW 54.24.080(1).  The Commission lawfully exercised that authority when it adopted the rate schedule challenged here.

Through this lawsuit, Plaintiffs invite this Court to second guess the Commission's decision to adopt the challenged rate schedule and ask the

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 1



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

1   Court to substitute its judgment for that of the Commission.   There is no

2   factual or legal basis for this Court to do so, and no basis for this Court to

3   grant extraordinary preliminary injunctive relief.

4
        Plaintiffs have not, and cannot, establish that the District or its

5   Commissioners acted in an arbitrary fashion when adopting Rate Schedule 17

6   ("**RS 17**"), or that there has been any violation of applicable state or federal

7
    statutes, let alone the state or federal Constitutions.   Further, Plaintiffs will

8
    not suffer irreparable harm if the Court denies their request for preliminary

9
    injunction because the District has committed to refunding incremental

10
    charges in the unlikely event Plaintiffs were to ultimately prevail. Nordt

11
12  Decl. ¶ 10.2, Ex. 10. Moreover, the equities weigh in favor of the District.   If

13  an injunction were granted it would hamper the District's ability to develop

14  appropriate electric rates and to protect existing ratepayers from burdensome

15  costs they did not cause.   Likewise, the public interest is best served by

16
    allowing the District, acting through its elected Commissioners, to serve the

17
18  needs of all of its customers through the establishment and implementation of

19  electric power customer classes and rates.

20

21

22

23

24

25
    DEFENDANTS' MEMORANDUM IN
    OPPOSITION TO PLAINTIFFS' MOTION FOR
    PRELIMINARY INJUNCTION - 2



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

## II.    FACTUAL BACKGROUND

### A. The District Serves the Electricity Needs of Grant County Customers.

The District is a municipal corporation organized under Title 54 of the Revised Code of Washington.  It provides electric service to retail customers in Grant County, a rural agricultural community.  Nordt Decl. ¶¶ 5.1; 5.4.

The District is obligated to serve the electric power demands of its customers. Nordt Decl. ¶ 5.5. It produces power from its hydroelectric facilities on the Columbia River and has some of the lowest retail electric power rates in the United States.  ECF No. 32-1 at 656.  This inexpensive power is attractive to large consumers of electricity.

The Commission establishes electric power rates based upon the District's cost to supply electric power.  Nordt Decl. ¶ 4.1. Customers do not all pay the same electric rates. Instead, customers are grouped, based on industry type, into various rate classes. *Id.* at ¶ 4.2. Each rate class has its own rate schedule, which details the rates a customer taking service under the rate schedule will be charged. *Id*. Ex. 1 (showing Rate Schedule 7). Currently, the District maintains 13 different rate classes. *Id*.

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 3



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

**B. The Flood of New Service Requests Presented by the Cryptocurrency Industry was Unprecedented.**

Plaintiffs are existing District retail customers who use low-cost power to mine cryptocurrencies. Electricity represents the cryptocurrency industry's primary operating cost. *Id.* at ¶ 6.6.  During the summer of 2017, the District began to receive an unprecedented number of new service requests. *Id.* at ¶ 6.1; ECF No. 32-1 at 457.  Since 2017, the District has received approximately 125 requests for service representing over 2,000 megawatts ("**MW**") of new electric load (most of which are from the cryptocurrency industry), more than three times the District's current average load of almost 600 MW. *Id.*  The number of new service requests and the volume of electric power needed to meet this demand are extraordinary. *Id.*  The District's existing rates, particularly Rate Schedule 7 ("**RS 7**") were based on historical trends for retail power demand and did not account for the costs associated with providing this additional service.[1]  ECF No. 32-1 at 457–58.

---

[1] Plaintiffs are currently served under RS 7. Nordt Decl. ¶ 4.3.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 4



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

### C. The Cryptocurrency Industry's Characteristics are Different from other Load the District Serves.

In response to the influx of service requests from the cryptocurrency industry, the District, under the direction of the Commission, undertook a review of the cryptocurrency industry to determine the potential impacts serving this load is likely to have on the District and its customers. ECF No. 32-1 at 458; Nordt Decl. ¶¶ 6.2–6.7. The District discovered that, unlike traditional customers, the cryptocurrency industry and its demand for electricity is prone to volatility. ECF No. 32-1 at 464; Nordt Decl. ¶ 6.6. The industry is extremely sensitive to cryptocurrency market conditions and the cost of electric power. It is also generally very mobile. *Id.* Conclusions regarding the unique characteristics of cryptocurrency and a study plan to develop an approach for electric service to the industry were presented to the Commission at an open public meeting on October 24, 2017. Nordt Decl. Ex. 2.

### D. The Evolving Industry Customer Class Resulted from Painstaking Analysis.

Between October 2017 and April 2018, District Staff ("**Staff**") studied how to best address cryptocurrency's power demand and its impact on District operations. Nordt Decl. ¶ 7.1. On April 17, 2018, Staff produced an

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 5



internal memorandum (the "**White Paper**") detailing its analysis and recommendations for addressing the issues associated with serving these new and unique customers. ECF 32-1 at 457–66. Staff assessed several alternatives but ultimately concluded that the creation of an Evolving Industry ("**EI**") Customer Class is the best approach. *Id.* Dietz Decl. ¶¶ 4.2–4.8. While the EI Customer Class was formed in response to the unique challenges posed by the cryptocurrency industry, it is not limited to that industry and will be applied to any industry meeting the prescribed criteria. ECF 32-1 at 457–66.

On April 24, 2018, the Staff's formal recommendation to establish an EI Customer Class and the proposed criteria to define industries included within the class were presented to the Commission in open public meeting.[2] Nordt Decl. ¶ 7.2.  At the same time, Staff presented a plan to develop a new rate for the EI Customer Class, consistent with District policies and based upon a cost of service analysis. Nordt Decl. at Ex. 3; ECF No. 32-1 at 457-71.

---

[2] These recommendations were also considered at an Evolving Industry Workshop on May 7, 2018.

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 6



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

Following this and other Staff analysis, on May 8, 2018, the Commission passed Resolution 8885 directing Staff to develop the EI Customer Class. Nordt Decl. Ex. 4.

Following the adoption of Resolution 8885, Staff proceeded to finalize the criteria for the EI Customer Class and corresponding rates. Nordt Decl. ¶ 7.10. On June 26, 2018, Staff presented the criteria and rate for service to the Commission at another open public meeting. Nordt Decl. ¶¶ 7.12–7.13, Ex. 5.

**E. Plaintiffs Received Extensive Opportunity for Public Comment.**

Plaintiffs and others received notice of the Commission's work and provided extensive comments throughout the process that led to development of RS 17. *Id.* at ¶¶ 8.1–8.4, Ex. 7. The Commission's business is conducted during meetings open to the public pursuant to Washington law. *Id.* The agenda, meeting materials, and presentations are posted on the District's website. *See, e.g.*, Johnson Ex. 1; Nordt Ex. 2; Ex. 5. During each meeting, any member of the public is welcome to address the Commission. Nordt Decl. ¶ 8.1. For example, during the June 26, 2018 Commission meeting, Plaintiff Cytline's representative and other members of the public engaged in

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 7



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

cryptocurrency mining commented on the proposed EI rates. *Id.* Staff also engaged in discussion with representatives of the cryptocurrency industry outside of Commission meetings.    Lunderville Decl. ¶ 5.1.    The District expressly invited written and oral comments on the proposed new rate schedule.  Nordt Decl. ¶ 8.1.

During the public meeting on July 10, 2018, Staff presented a draft resolution for the Commission for review that would establish RS 17, including the rates EI customers would be charged. *Id.* at ¶ 8.2.    The documents provided to the Commission detailed the Staff's extensive analysis and rationale for these recommendations. *Id.* at Ex. 6. At that meeting, the Commission accepted public comments on the proposed resolution. *Id.* at ¶ 8.2.

The Commission again took public comment at the July 24 and August 14, 2018, meetings. *Id.* at ¶ 8.4. Plaintiffs' representatives provided oral and written comments. *Id.* at Ex. 7; Johnson Decl. Ex. 1. Between July 9 and August 14, 2018, Plaintiffs WeHash, Telco 214, Cytline, 509 Miners, and Mark Vargas, and Michael Ages of Plaintiff Fortress, all submitted written comments to the Commission. Nordt Decl. at Ex. 7.

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 8



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

1
2
3
4
5

Throughout the development and implementation of RS 17, Staff continued to work with Plaintiffs and the cryptocurrency industry to keep them apprised of developments and potential impacts.  *See generally Id.;* Lunderville Decl. ¶ 5.1.

6
7
8
9
10
11
12
13
14
15
16
17

After considering Staff recommendations, along with the comments submitted by the public, on August 28, 2018, the Commission unanimously adopted RS 17 through Resolution 8891. Nordt Decl. ¶ 8.6, Ex. 9.  In an effort to address concerns about rate shock voiced by existing cryptocurrency customers, the Commission phased in rate changes over three years, and delayed the initial effective date to April 1, 2019.[3]  *Id.* at ¶ 8.6.  Additionally, rates are based upon serving only 200 MW of new customer load, rather than the total load of customers with completed service applications or the almost 2,000 MW represented by service inquires.  *Id.* at ¶ 7.15.

18
19
20

The Commission's determination that the cryptocurrency industry is subject to RS 17 is also subject to annual review. *Id.* at ¶¶ 8.10, 9.3; ECF No.

21
22
23
24

[3] Contrary to Plaintiffs' assertions, the average difference of Plaintiffs' rates under RS 7 and RS 17 is approximately 32% for the first year. Nolan Decl. ¶ 5.4.

25

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 9



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

32-1 at 427–28. Additionally, during each annual review, certain elements of the rate, including the risk premium element, will be reviewed and may result in rate changes. Nordt Decl. ¶ 9.3, *See also* Ex. 6 at 91. The District anticipates these annual reviews will be initiated in late summer or early fall, with any Commission changes to the industries covered by RS 17, or the applicable rates, becoming effective the following April 1. *Id.* at Ex. 8 at 109. Importantly, the first annual review will begin in summer 2019. *Id.* During that review, Plaintiffs and any other stakeholder may submit comments. *Id.* at 9.3. Any changes in covered industries or rates from this first annual review would be effective April 1, 2020. *Id.* Ex. 8.

### III. <u>ARGUMENT</u>

### A. Preliminary Injunction is an Exceptional Remedy.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Idaho Rivers United v. United States Army Corps of Engineers,* 156 F.Supp.3d 1252, 1259 (W.D. Wash. 2015) (quoting *Mazurek v. Armstrong*, 520 U.S. 972 (1997) (italics in original)). The Ninth Circuit has warned that a preliminary injunction should not be issued lightly since

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 10



"[t]he grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged in except in a case clearly warranting it." *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir.1964).

## B. Plaintiffs are Not Likely to Prevail on the Merits.

### 1. The Rate Schedule 17 rates are reasonable and lawful.

Plaintiffs argue that the Commission's adoption of RS 17 and its associated rates are unlawfully discriminatory and excessive under both state and federal law.[4]    They accuse the District of violating both RCW 54.24.080(1) and Section 20 of the Federal Power Act.  16 U.S.C. § 813.  For the reasons below, they are wrong.

> *a. The District has the full and exclusive authority to set rates and its decisions are entitled to deference by this Court.*

RCW 54.16.040 and RCW 54.24.080(1) provide the District with the "full and exclusive" authority to set both rates and terms and conditions of service.  Wash. Rev. Code 54.24.080(1).  The District's adoption of RS 17 was a lawful exercise of this authority. These statutes afford the Commission

---

[4] For the limited purpose of this Motion, Defendants address only those arguments advanced by Plaintiffs in their Motion for a Preliminary Injunction.

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 11



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

with broad authority to make rate decisions, and those decisions are "presumptively reasonable." *Irvin Water Dist. No. 6 v. Jackson P'ship*, 109 Wash. App. 113 (2001); *see also Wash. Manufactured Hous. Ass'n v. Pub. Util. District No. 3 of Mason Cty*, 124 Wash.2d 381, 385 (1994), citing *Hillis Homes, Inc. v. Public Util. Dist. 1*, 105 Wash.2d 288, 298–300 (1986) ("rates and charges are presumptively reasonable"). RS 17 benefits from this presumption.

Furthermore, Washington courts reasonably defer to municipal utility decisions.  The Court in *Public Utility District No. 2 of Pacific County v. Comcast of Washington IV, Inc.*, 184 Wash. App 24, 45 (2015) stated that "[w]here 'municipal utility actions come within the purpose and object of the enabling statute and no express limitations apply,' it is proper to leave 'the choice of means used in operating the utility to the discretion of municipal authorities.'" 184 Wash. App 24, 45 (2015) (*quoting City of Tacoma v. Taxpayers of City of Tacoma*, 108 Wash.2d 679, 695 (1987).  "Consistent with its holding in City of Tacoma, our Supreme Court has shown deference to an implementing entity where the governing statute delineated general boundaries for proper rates." *Id.* (*citing People's Org. for Wash. Energy Res.*

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 12



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

*v. Utils. & Transp. Comm'n*, 104 Wash.2d 798, 808, 823 (1985) (*"People's"*). *Id.* Here, the Commission clearly acted within its authority under RCW 54.24.080(1) and 54.16.040 to establish rate classes and set rates.    These decisions are presumptively reasonable and entitled to deference.

> b.    *The Commission's decisions are not arbitrary and capricious.*

To overcome the presumption of legality described above, the Plaintiffs must establish that the Commission's actions were "arbitrary and capricious." *Public Util. Dis. No. 2 of Pacific Cty*, 184 Wash. App. at 45.    This is an exceptionally heavy burden of persuasion.    *Greenen v. Wash. State Bd. of Accountancy,* 126 Wash. App. 824, 830 (2005) ("the party challenging [] carries a heavy burden to persuade an appellate court that the [] decision is erroneous") (quotations omitted); *In re Disciplinary Proceeding Against Brown,* 94 Wash. App. 7, 16 (1999). A decision is arbitrary and capricious only if it "is willful and unreasoning, taken without regard to the attending facts or circumstances." *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*, 149 Wash.2d 17, 26 (2003) (quoting *Rios v. Dep't of Labor & Indus.*, 145 Wash.2d 483 (2002)) (internal quotations omitted). An "[a]ction

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 13



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

is arbitrary and capricious where 'there is no support in the record for the action.'" *Dorsten v. Port of Skagit Cty.*, 32 Wash. App. 785, 793 (1982) (*citing Barrie v. Kitsap Cy. Boundary Review Bd.*, 97 Wash.2d 232, 236 (1982)).

Under the arbitrary and capricious standard, the Commission's decisions must be sustained if the Court can reasonably "conceive of *any* state of facts to justify that determination." *Teter v. Clark Cty.*, 104 Wash.2d 227, 235 (1985) (emphasis in original) (citing *Ace Fireworks Co. v. City of Tacoma*, 76 Wash.2d 207, 210 (1969); *See Public Util. Comm'n of State of Cal. v. United States*, 356 F.2d 236, 241 (9th Cir. 1966). "Where there is room for two opinions, an action is not arbitrary or capricious when exercised honestly and upon due consideration." *Friends of Columbia Gorge, Inc. v. Wash. State Forest Practices Appeals Bd.*, 129 Wash. App. 35, 57–58 (2005) (quoting *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wash.2d 740, 769 (2002)) (internal quotations omitted). Moreover, courts are not to substitute their judgment for decisions of public entities. *State ex rel. Rosenberg v. Grand Coulee Dam Sch. Dist. No. 301 J*, 85 Wash.2d 556, 563 (1975). Even a cursory review of the analysis and process that led to the

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 14



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

adoption of RS 17 clearly shows that Plaintiffs are not likely to establish that the Commission's decisions were arbitrary and capricious. The Commission's decisions are reasonably based on the costs and risks associated with service to customers in the EI rate class at the requested volumes of service. Nordt Decl. ¶¶ 6.1–6.4; Ex. 2; Ex. 3; Ex. 5; Ex. 6; Nolan Decl. ¶ 4.2–4.4, 4.11–14; Dietz Decl. ¶¶ 4.1–5.3; Williams Decl. ¶¶ 4.2–4.4. Thus, there is no basis for this Court to substitute its judgment for that of the Commission in this case.

> ### c. The EI Customer Class established via Rate Schedule 17 is not discriminatory.

The United States Supreme Court has observed that rate setting "involves judgment on a myriad of facts. It has no claim to an exact science." *Colorado Interstate Gas Co. v. Fed. Power Comm'n*, 324 U.S. 581, 589 (1945), *reh'g denied*, 325 U.S. 891 (1945). Here, the District engaged in reasoned decision-making when it established RS 17 and when it decided that the cryptocurrency industry would be subject to it. While the Plaintiffs were previously provided service under RS 7, when faced with a flood of service requests from a new and unique industry, the District recognized it was entering unchartered territory and undertook a thorough review of its

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 15



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

options.  Nordt Decl. ¶¶ 4.3, 6.1–6.3; ECF No. 32-1 at 457–66. The District determined that it lacked the grid infrastructure and electric power resources needed to serve the evolving cryptocurrency industry in Grant County based upon the volume of interest in electric service expressed by the industry. Nordt Decl. ¶ 6.7.

The fact that the EI Customer Class was developed in response to the influx of service requests from the cryptocurrency industry does not constitute unlawful discrimination as the Plaintiffs suggest. ECF No. 25 at 21–22. Should another industry present the same traits, the District fully intends to apply RS 17 to it. Nordt Decl. ¶ 8.10. Contrary to Plaintiffs' assertions, the Commission sought to strike a balance between protecting traditional customers and fairness to existing cryptocurrency customers, including Plaintiffs. *Id.* at ¶ 8.1.

Plaintiffs also wrongly assert that District Staff, and not the Commission, determines which customers are in EI Customer Class.  ECF No. 25 at 24–25.  While the Staff will annually conduct an initial review, its conclusions are ultimately subject to review by the Commission. Nordt Decl.

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 16



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

¶ 8.10, ¶ 9.3; Ex. 8 at 109. The Commission is not required to accept the Staff's recommendation. *See Id.*  Wash. Rev. Code 54.16.040, 54.24.080.

> ### d.  The rates established under Rate Schedule 17 are based on reasonable analysis and decision making.

Existing rate schedules were not designed to address the rapid increases or decreases of electricity demand associated with the cryptocurrency industry. ECF No. 32-1 at 457–58.  RS 7 rates were based on assumptions about historic retail power demand and the cost of operating and maintaining the power system as is—*not* the future costs of operating and maintaining a system supporting the volume of interest in electric service the District received from the cryptocurrency industry. *Id.*; Nolan ¶ 4.18; Nordt Decl. ¶ 6.3. To fairly allocate the District's costs to serve the new demand associated with the cryptocurrency industry, the Commission adopted RS 17. Nordt Decl. ¶ 6.6, Ex. 9; ECF No. 32-1 at 427–29, 457–71, 496–97.

Plaintiffs' reliance upon the conclusory analysis of a single witness, ECF No. 26, to challenge the outcome of the District's multidisciplinary process that resulted in the adoption of RS 17 is unavailing. *See generally* Nolan Decl. ¶¶ 4.1–4.22; Dietz Decl. ¶¶ 5.1–5.5; Lunderville Decl. ¶¶ 6.1–6.2, Williams Decl. ¶¶ 4.1–4.20.  Plaintiffs dispute the District's cost of

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 17



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

service analysis and would prefer a different approach. ECF No. 25 at 25. They argue that RS 17 fails to apply the same rates to customers that are indistinguishable from cryptocurrency customers on a cost of service basis. *Id.* While cryptocurrency customers share some traits with other customers in the District service area, Plaintiffs fail to account for the unique features of the cryptocurrency industry, particularly the volatility of cryptocurrency prices and the mobility of cryptocurrency operations. Nolan Decl. ¶¶ 4.2, 4.12; Nordt Decl. ¶ 6.6, ¶ 7.5, Ex. 3 at 68–70.

Plaintiffs also incorrectly suggest that rates must be based on "scientific analysis." In this regard, Plaintiffs repeatedly misrepresent the holdings in *Lincoln Shiloh. See* ECF No. 25 at 26. *Lincoln Shiloh Assocs., Ltd. v. Mukilteo Water Dist.,* 45 Wash. App. 123, 129–30 (1986). *Lincoln* imposes no such requirement.[5] In fact, contrary to the Plaintiffs' misrepresentations,

---

[5] *Lincoln* holds that a public utility district may classify its customers into different classes and allocate different charges to those classes of customers as long as the basis for the classification is reasonable and nondiscriminatory. 45 Wash. App. at 129–30. While a statistical analysis can be one reasonable

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 18



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

the Supreme Court of Washington has held that "only a *practical* basis for the rates is required, not mathematical precision." *Teter*, 104 Wash.2d at 238 (emphasis in original).

Plaintiffs further incorrectly assert that the RS 17 rates are not cost based. ECF No. 25 at 26–28. The rates incorporate both direct and indirect costs. Dietz Decl. ¶¶ 5.1–5.5; Nolan Decl. ¶¶ 4.7–4.9, 4.19–4.22; Williams Decl. ¶¶ 4.4–4.17. Furthermore, the rates appropriately incorporate the costs the District will incur to service an influx of cryptocurrency customers. Dietz Decl. ¶¶ 5.1–5.5; Nolan Decl. ¶¶ 4.2–4.5; Williams Decl. ¶ 4.5. Finally, Plaintiffs wrongly argue that the challenged rates violate common rate making principles. ECF No. 25 at 28. Staff determined that the rates were consistent with common rate making principles and reviewed the rate for consistency with District policies. Nolan Decl. ¶¶ 4.2, 4.6, Williams Decl. ¶¶ 4.2–4.3 In light of the District's reasoned decision making, the Plaintiffs cannot establish that RS 17 was adopted arbitrarily and capriciously.

---

basis for setting rates, the Court did *not* hold that providing such evidence is the "only" basis for setting rates. *Id.*

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 19



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

1

*e.  Plaintiffs will not prevail on their Federal Power Act claim.*

2    Plaintiffs assert that the District violated section 20 of the Federal Power

3    Act, and that such violation is a basis for this court to grant a preliminary

4

5    injunction.  ECF No. 25 at 24 n. 52.    The Federal Energy Regulatory

6    Commission ("**FERC**"), the agency responsible for administering Part I of

7    the Federal Power Act including section 20, has held that section 20 of the

8

9    Federal Power Act does not apply to the District.  In *The Yakama Nation v.*

10   *Public Util. Dist. No. 2 of Grant Cty., WA*, Project No. 2114-106, Order on

11   Complaint 2002 WL 31990298 (2002), the Commission reviewed the history

12

13   of sections 19 and 20 of the Federal Power Act and concluded that because

14   the District is a municipal entity to which the state has expressly granted self-

15   regulatory authority, "Sections 19 and 20 do not apply to it."  *Id.* at *4.

16

17   Applying this reasoning, Plaintiffs cannot establish that Defendants violated

18   the statute.

19
    **2.  Plaintiffs will not succeed on their claim under the Due
20       Process Clause of the United States Constitution.**

21   Courts undertake a two-step analysis to determine whether a plaintiff

22   has successfully asserted a Due Process Clause violation. The court first asks

23

24   whether there was a deprivation of a constitutionally protected liberty or

25

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 20



1   property interest. If so, the court then considers if there was a denial of that

2   interest without adequate procedural protections.

3
        *a.   Plaintiffs do not have a constitutionally protected*

4           *property interest in their current electricity rate.*

5       To state a claim under the Due Process Clause, a plaintiff must first

6
7   establish the possession of a "property interest" that is deserving of a

8   constitutional protection. *Brewster v. Bd. of Educ. Of Lynwood Unified Sch.*

9   *Dist.*, 149 F.3d 971, 982 (9th Cir. 1998); *Gilbert v. Homar*, 520 U.S. 924,

10
11  928 (1997). Plaintiffs have no such right. The Supreme Court has held that

12  utility customers have no vested rights in any particular utility rates under the

13  United States Constitution. *Wright v. Cent. Kentucky Nat. Gas Co.*, 297 U.S.

14
15  537, 542 (1936).

16          *b.   Plaintiffs were afforded ample opportunities to make their*

17          *views known.*

18      As an initial matter, the function of rate making is legislative in nature.

19  As such, ratepayers have no constitutional right to participate. In any event,

20
21  the District afforded Plaintiffs the ability to be heard and participate in the

22  process that resulted in RS 17.

23      As discussed above, the District's Commissioners have the exclusive

24
25  authority to set rates for electric service under Washington law. The

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 21



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

Washington State Supreme Court has acknowledged that the state of Washington delegated rate making authority to agencies and "direct[s] them to set those rates which [they] determine to be just and reasonable." *People's,* 104 Wash.2d at 807.  Accordingly, the Court found that the "function of rate making is legislative in character." *Id.*  Because setting rates is a legislative function, the constitutional right to participate does not attach. *See Pub. Utils. Comm'n of State of Cal.*, 356 F.2d at  241.

Although the Plaintiffs were not entitled to it, the record demonstrates that they were afforded ample notice and opportunity to be heard throughout the development of RS 17.  *See generally* Nordt Decl. Ex. 7, Johnson Decl. Ex. 1 at 5; Lunderville Decl. ¶ 5.1.  The public was given regular updates and opportunities to be heard through workshops, open meetings, individualized meetings with stakeholders—including many of the Plaintiffs—District website postings, and opportunities to submit written comments. Lunderville Decl. ¶ 5.1; Nordt Decl. ¶¶ 8.1, 8.4, ECF No. 32-1 at 10–16. Plaintiffs availed themselves of these opportunities and provided comments to the District on multiple occasions.  *See generally* Nordt Decl. Ex. 7; Johnson Decl. Ex. 1 at 5.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 22



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

Plaintiffs do not have any valid due process claim; they simply object to the outcome. They erroneously claim that the implementation of RS 17 violates basic principles of due process by allowing District Staff to make decisions about whether an entity is or is not classified as an Evolving Industry. ECF No. 25 at 30–33. Within RS 17, the Commission provided for, among other things, an annual review. Nordt Dec. ¶ 9.3, Ex. 8, Ex. 9 at 113–15. District Staff will undertake this analysis, and present its conclusions, with any recommendations for changes, to the Commission for consideration. *Id.* at ¶ 9.3, Ex. 8. Moreover, Staff's authority to perform rate analysis and to implement a rate is not unlawful. *Jeffers v. City of Seattle*, 23 Wash. App. 301, 309 (1979); *Murray v. Shanks*, 27 Wash. App. 363, 366–67 (1980). But, ultimately, it is the Commission that determines the industries that fall under RS 17 and the rates they will pay. Nordt Decl. ¶ 9.1, ¶ 9.3, Ex. 8.

### 3. Plaintiffs will not prevail on their claim under Article I, Section 12 of the Washington Constitution.

The Plaintiffs will not prevail on their claims under Article I, § 12 of the Washington State Constitution because their assertions misrepresent the purpose of this section and are based upon inaccurate underlying facts. It has

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 23



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

been held that "[t]he aim and purpose of [Article I, §12] is to secure equality of treatment to all persons without undue favor on one hand or hostile discrimination on the other." *Geneva Water Corp. v. City of Bellingham*, 12 Wash. App. 856, 863 (1975).  In order to comply with this aim and purpose, "the legislation under examination [must] apply alike to all persons within a class, and reasonable ground must exist for making a distinction between those within and those without a designated class." *Id.*  As explained above, RS 17 will apply to all entities that fall within the EI Customer Class in a non-discriminatory manner. Nordt Decl.¶ 7.8. It is the Plaintiffs' burden to prove that the rates are discriminatory. *Geneva Water Corp.*, at 865.  None of the case law cited by Plaintiffs holds that setting different rates for different classes of customers is itself impermissibly discriminatory.  A utility may discriminate on the basis of price as long as there are reasonable grounds for doing so and a "just relation to the subject-matter of the act in respect to which the classification is made."  *State ex rel. Bacich v. Huse*, 187 Wash. 75, 83–84 (1936), *overruled on other grounds by Puget Sound Gillnetters Ass'n v. Moos*, 92 Wash. 2d 939 (1979)*.*

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 24



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

As discussed in Section II.B(2)(c), the Commission had reasonable grounds for promulgating RS 17 and setting separate rates for the EI Customer Class. For these reasons, Plaintiffs' claims pursuant to Article I, § 12 of the Washington state constitution must fail.

### C. Any Harm to Plaintiffs is Not Irreparable and Imminent.

Plaintiffs assert that they will suffer monetary damages if subjected to RS 17 prior to a final judgment in this case. Monetary injuries are generally not irreparable. *See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). Furthermore, the District will refund the difference in the rate paid under RS 17 in the unlikely event Plaintiffs prevail. Nordt Decl. ¶ 10.1, Ex. 10 at 122–23.

Plaintiffs' claim potential bankruptcy and the loss of investments, but these claims are self-serving and are not imminent. The mere possibility of harm is not sufficient to show likely irreparable injury. *See Enyart v. Nat'l Conf. of Bar Exam'rs Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011). Moreover, Plaintiffs overstate the scale of the imminent rate change. The rate change to take effect April 1, 2019 will increase Plaintiffs' rates approximately 32%. Nolan Decl. ¶ 5.4.

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 25



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

### D. The Equities Weigh in Favor of the District.

RS 17 was adopted out of necessity.  Nordt Decl. ¶ 6.1. RS 7 was not adequate to cover the costs of serving the evolving industries given the volume of service requests received from the cryptocurrency industry. *Id.* The rush of requests exposed serious deficiencies in the District's current customer connection policies, procedures, rate design, and facility cost contribution formulae when applied to risks inherent in the cryptocurrency industry. *Id.* ECF No. 457–471. After a year-long process of inquiry and careful consideration of all the alternatives, the District adopted RS 17. Nordt Decl. ¶¶ 6.1–8.8 (detailing the year long process); Dietz Decl. ¶¶ 4.1–4.8 (same).

Washington law requires the Commission to set rates that are "adequate to provide revenues sufficient for the payment of the principal of and interest on . . . revenue obligations . . . and for the proper operation and maintenance of the public utility and all necessary repairs, replacements and renewals." Wash. Rev. Code 54.24.080(1).  An injunction will hamper the District's ability to collect revenues as required by Washington law.

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 26



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

**E. A Preliminary Injunction is Not in the Public Interest.**

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008) (discussing whether a preliminary injunction should be granted) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). An injunction will not be granted unless the public interests in favor of granting an injunction "outweigh other public interests that cut in favor of *not* issuing the injunction." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (emphasis in original).

The District is a public utility district, authorized by state law, and governed by duly elected Commissioners. The Commission's actions are taken in pursuit of the public interest, consistent with the directives in Washington law. *See, e.g.*, Wash. Rev. Code 54.16.040; .080.

As a practical matter, an injunction against Customer Classification and rate setting would shift rate making authority from an elected commission to this Court, contrary to Washington law. The District must be able to engage in lawful rate making without the threat of undue judicial intervention.

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 27



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

**F. Plaintiffs Must Provide Security if a Preliminary Injunction is Granted.**

Rule 65(c) of the Federal Rules of Civil Procedure provides that a district court may grant a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  The court retains continuing discretion as to the amount of bond, if any, but should consider the realistic likelihood of harm to an enjoined party when considering the amount of the bond. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

In the unlikely event that this Court grants Plaintiffs' request for a preliminary injunction, the appropriate security is a bond in the amount of $647,646.23. This amount is based on the difference between the rates assessed under RS 17 and RS 7 during the period April 1, 2019, to the anticipated trial date on or about March 31, 2020. Using each of the Plaintiffs' electricity consumption in 2018, Staff calculated the average amount Plaintiffs paid the District for service in 2018 under RS 7. Nordt Decl. ¶ 10.3.  Staff then calculated the annual charge under the first year of

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 28



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

RS 17 (April 1, 2019—March 31, 2020).  *Id.* The difference between charges

under RS 7 (2018) and RS 17 (2019) is the amount requested.[6]

## IV.  **CONCLUSION**

For the reasons set forth above, the Plaintiffs fail to meet the criteria

necessary for granting the Motion for Preliminary Injunction, and therefore

the Motion must be denied.

DATED this 1st day of March, 2019.

VAN NESS FELDMAN LLP

*/s/ Dale N. Johnson*
Dale N. Johnson, WSBA #26629
Malcolm C. McLellan, WSBA #23346
719 Second Avenue, Suite 1150
Seattle, WA  98104
T: 206-623-9372
F: 206-623-4986
E: dnj@vnf.com; mcm@vnf.com

*Attorneys for Defendants*

---

[6] *See* Nordt Decl. Ex. 11, at 125–29, for a detailed explanation of the rates

assessed under RS 17 and RS 7.

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 29



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 1, 2019, I electronically filed the foregoing (and the documents listed below) with the Clerk of the Court using CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system.   The NEF for the foregoing specifically identifies recipients of electronic notice.

- Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction;
- Declaration of Dale Johnson with Exhibits 1-2;
- Declaration of Kevin Nordt with Exhibits 1-11;
- Declaration of Jeremy Nolan with Exhibit 1;
- Declaration of Devon Williams;
- Declaration of Shane Lunderville;
- Declaration of Paul Dietz;
- [Proposed] Order Denying Plaintiffs' Motion for Preliminary Injunction [judge only]; and [this]
- Certificate of Service.

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

CERTIFICATE OF SERVICE - 1



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372

EXECUTED at Seattle, Washington on this 1st day of March, 2019.

/s/ Amanda C. Kleiss
Declarant

CERTIFICATE OF SERVICE - 2



719 Second Avenue, Suite 1150
Seattle, WA 98104
(206) 623-9372