ERIC L. CHRISTENSEN
JONATHAN D. TEBBS
CAIRNCROSS & HEMPELMANN PS
524 SECOND AVENUE, SUITE 500
SEATTLE, WA 98104
T: 206.587.0700

HONORABLE ROSANNA
MALOUF PETERSON

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
### AT SPOKANE

BLOCKTREE PROPERTIES, LLC, a
Washington limited liability company,
CORSAIR INVESTMENTS WA, LLC,
a Washington limited liability company,
CYTLINE, LLC, a Delaware limited
liability company, 509 MINE, LLC, a
Washington limited liability company,
MIM INVESTORS, LLC, a Washington
limited liability company, MINERS
UNITED, LLC, a Washington limited
liability company, TELCO 214
WHOLESALE SOFTWARE, INC., a
Washington corporation, MARK
VARGAS, an individual, and,
WEHASH TECHNOLOGY, LLP, a
Washington limited liability company,

Plaintiffs,

v.

PUBLIC UTILITY DISTRICT NO. 2
OF GRANT COUNTY,
WASHINGTON, a Washington
municipal corporation, TERRY

NO. 2-18-CV-00390 RMP

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR PRELIMINARY
INJUNCTION AND REQUEST FOR
EXPEDITED RELIEF

NOTE ON MOTION CALENDAR:
MARCH 19, 2019

ORAL ARGUMENT REQUESTED

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700    fax 206 587 2308

{03687197.DOCX;5 }

1  BREWER, individually and in his
   official capacity, BOB BERND,
2  individually and in his official capacity,
   DALE WALKER, individually and in
3  his official capacity, TOM FLINT,
   individually and in his official capacity,
4  LARRY SCHAAPMAN, individually
   and in his official capacity, and DOES
5  1-10, managers and employees of Grant
   PUD, individually and in their official
6  capacities,

7              Defendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 2

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700    fax 206 587 2308

{03687197.DOCX;5 }

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY ............................................................ 1

II.   AUTHORITY AND ARGUMENT ............................................................... 2

    A.    RS-17 is illegally discriminatory............................................................. 2

        1.    Grant's Factual Claims Do Not Withstand Scrutiny. ................ 2

        2.    Washington Law Bars Grant's Illegally Discriminatory Rate.................................................................................................. 7

        3.    RS-17 Does Not Survive the Federal Power Act's Prohibition of on Discrimination. ................................................ 9

    B.    Grant Violates Plaintiffs' Due Process Rights. ................................... 10

    C.    RS-17 Violates Article 1, § 12 of the Washington Constitution........ 12

III.  PLAINTIFFS FACE IMMEDIATE HARM FROM THE ADOPTION OF RS-17. ....................................................................................................... 13

IV.   THE EQUITIES FAVOR GRANTING A PRELIMINARY INJUNCTION.............................................................................................. 14

V.    NO BOND SHOULD BE REQUIRED......................................................... 14

VI.   CONCLUSION............................................................................................... 15

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - I

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03687197.DOCX;5 }

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. City of Issaquah*, 70 Wn. App. 64 (Wash. Ct. App. 1993) ................... 3

*Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*,
182 Wn. 2d 342 (Wash. 2015) ............................................................... 13

*CPS Energy v. PUC of Texas*, 537 S.W.3d 157 (Tex. App. 2017) ........................... 9

*Hillis Homes, Inc. v. PUD No. 1 of Snohomish Cnty.*, 105 Wn. 2d 288
(Wash. 1986) ................................................................................... 8

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) ........................................ 14

*Kliks v. Dalles City*, 335 P.2d 366 (Or. 1959) .............................................. 8

*Lincoln Shiloh Assocs., Ltd. v. Mukilteo Water Dist.*, 45 Wn. App. 123
(Wash. Ct. App. 1986) ......................................................................... 8

*Memphis Gas, Light & Water Div. v. Craft*, 436 U.S. 1 (1978) ........................... 11

*Mich. Bell Telephone Co. v. Engler*, 257 F.3d 587 (6th Cir. 2001) ....................... 11

*Mississippi Power Co. v. Miss. Pub. Serv. Comm'n*, 168 So.3d 905 (Miss.
2015) .......................................................................................... 11

*Monongahela Power Co. v. Schriber*, 322 F. Supp. 2d 902 (S.D. Ohio 2004) ........ 2

*O'Neal v. City of Seattle*, 66 F.3d 1064 (9th Cir. 1995) .................................... 9

*Ochoa v. Campbell*, 266 F. Supp. 3d 1237 (E.D. Wash. 2017) ........................... 15

*Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of
Health & Human Servs.*, 328 F. Supp. 3d 1133 (E.D. Wash. 2018) .................. 14

*The Yakama Nation v. Grant PUD*, 103 FERC ¶ 61,073 (2003) ...................... 9, 10

**Statutes**

16 U.S.C. § 813 ................................................................................. 9

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - II

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03687197.DOCX;5 }

1

**Other Authorities**

2  McQuillan, 12 Municipal Corporations § 35:56 at 859 (3rd ed. 2017) .................... 7

3  Washington State Constitution, Article 1, § 12 ................................................. 12, 13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - III

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700    fax 206 587 2308

{03687197.DOCX;5 }

## I.    INTRODUCTION AND SUMMARY

RS-17 singles out cryptocurrency businesses for crippling rate increases. Grant's own documents make clear Grant intended to favor "traditional" customers at the expense of disfavored customers like Plaintiffs, and Grant concedes that Plaintiffs' load profiles, and the resulting costs to serve Plaintiffs, are no different than other Grant customers. Grant nonetheless claims it was permissible to single Plaintiffs out because cryptocurrency prices are volatile and because cryptocurrency businesses are mobile. Many other Grant customers face comparable or worse price volatility and Plaintiffs are anything but mobile, having invested tens of millions of dollars in non-movable assets in Grant County.

Likewise, Grant has classified Plaintiffs as "evolving industries" with no notice, no hearing, no opportunity to present evidence, and no opportunity for appeal.  Grant claims, based on unwritten rules that may or may not eventually be adopted, that Plaintiffs might be reclassified. But this cannot cure the violation that has already occurred. Similarly, Grant's own documents demonstrate that RS-17 will confer benefits on powerful local interests while denying those same benefits to Plaintiffs, which violates Article I, Section 12 of the Washington Constitution. Plaintiffs therefore have a reasonable chance of success on the merits.

Plaintiffs face immediate harm from the violations of their constitutional rights and the threat of bankruptcy from RS-17's extreme rate increases. Grant

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 1

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03687197.DOCX;5 }

1  faces no such harm because the need for rapid expansion of Grant facilities that

2  would be funded by RS-17 no longer exists (if it ever did). Further, if RS-17 forces

3  Plaintiffs into bankruptcy, Grant's other ratepayers will have to bear the loss of the

4  $2 million in revenues Grant would otherwise receive from Plaintiffs. Accordingly,

5  Plaintiffs are faced with immediate harm, the equities favor an injunction, and an

6  injunction will further the public interest.

7       Because Plaintiffs satisfy all four prongs of the injunction test, the Court

8  should grant a preliminary injunction. *See, e.g.*, *Monongahela Power Co. v.*

9  *Schriber*, 322 F. Supp. 2d 902 (S.D. Ohio 2004).

10                  **II.    AUTHORITY AND ARGUMENT**

11  **A.    RS-17 is illegally discriminatory.**

12         **1.    Grant's Factual Claims Do Not Withstand Scrutiny.**

13       Plaintiffs are likely to prevail on the merits because RS-17 is discriminatory

14  and arbitrary for multiple reasons. Grant fails to address several of these reasons:

15       (1) the EI Queue policy forces cryptocurrency businesses to the back of

16  Grant's service request queue behind all "traditional" customers. ECF 25 at 6-7,

17  14. This policy is obviously and blatantly discriminatory.

18       (2) Plaintiffs are current Grant customers who began taking service from

19  Grant when the utility had an excess of both transmission and generation capacity.

20  Hence, as two of the Commissioners recognized, existing cryptocurrency

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 2

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700    fax 206 587 2308

{03687197.DOCX;5 }

1   businesses like Plaintiffs are not imposing costs on Grant. *Id.* at 20. RS-17 is

2   therefore irrational because it seeks to force Plaintiffs to pay for future

3   transmission upgrades that are entirely unrelated to Grant's cost to serve Plaintiffs.

4   RS-17 is discriminatory because it singles out Plaintiffs to pay for these upgrades

5   while excusing every other existing customer from paying a share of these

6   upgrades.

7   (3) RS-17 employs completely subjective language to define the "evolving

8   industries" rate class, and therefore violates well-accepted principles of utility

9   ratemaking, *id.* at 18, which also creates an illegal delegation of ratemaking

10   authority from the Commission to Grant Staff. *Id.* at 16-17; *Anderson v. City of*

11   *Issaquah*, 70 Wn. App. 64, 79-81 (Wash. Ct. App. 1993).

12   RS-17 is illegally discriminatory in several other ways that Grant answers

13   only desultorily:

14   (1) RS-17 forces Plaintiffs to pay a 32% premium, which is a direct transfer

15   of wealth from Plaintiffs to Grant's favored "traditional" customers. ECF 25 at 18.

16   Grant concedes "this cross-subsidy is an explicit transfer from one group of

17   customers to another," defending it only as "established practice." ECF 37-2 at 12.

18   But a practice is not non-discriminatory or non-arbitrary just because it is

19   "established." In any event, this wealth transfer does not follow established

20   practice. On the contrary, the 32% cross-subsidy is applied to Schedule 15

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 3

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

{03687197.DOCX;5 }

1    customers, whose capacity is 15 MW or more.[1] But all Plaintiffs are currently

2    served under Rate Schedule 7, and therefore have between 200 to 5,000 kW of

3    billing demand (0.2 to 5 MW). No Plaintiff comes close to the 15 MW threshold

4    for Rate Schedule 15. In fact, Grant adopted the premium "based upon" Staff's

5    "perception of the type of customer and what our customers and governance would

6    want in terms of discounts and premiums," Christensen Supp. Decl. Ex. 54, not on

7    rigorous rate analysis. RS-17 is arbitrary for these additional reasons.

8          (2) RS-17 is arbitrary and capricious because it violates Grant's own policies

9    on ratemaking, contained in Resolution No. 8768, on multiple grounds. ECF 25 at

10   20-21. Grant concedes that RS-17 violates the Resolution's 2% limit on annual rate

11   increases and its limits on cross-subsidies. Grant asserts only that Plaintiffs were

12   never promised that their rates would not change. ECF 37-3 at 3. But Plaintiffs

13   *were* repeatedly promised that their rates would be stable and would increase only

14   in small and predictable amounts, ECF 25 at 3, a policy embodied in Resolution

15   No. 8768. Plaintiffs relied on these representations in investing more than $30

16   million in Grant County. *Id.* Grant's decision to arbitrarily ignore its own

17   ratemaking policies now threatens those investments.

18

19

20   [1] *See* Christensen Supp. Decl. Ex. 53.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 4

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700    fax 206 587 2308

{03687197.DOCX;5 }

1    Grant also argues it was permissible under Resolution No. 8768 to force

2  Plaintiffs into a new rate class. ECF 37-5 at 6. But Grant's actions would be

3  permissible only if Plaintiffs had increased their load on Grant so that they moved

4  into a new rate class by, for example, exceeding the 15 MW threshold for service

5  under Rate Schedule 15. Plaintiffs have not placed any new demand on Grant or

6  otherwise changed their operations in any way relevant to Grant's cost to serve

7  Plaintiffs. Grant's departure from Resolution No. 8768 is therefore arbitrary and

8  capricious.

9    Grant's attempts to justify the remaining discriminatory aspects of RS-17

10  also fail. Grant concedes that RS-17 is premised on a "flood" of cryptocurrency

11  businesses that will force Grant to accelerate its construction of new facilities. ECF

12  37 at 4. But if a "flood" ever existed, it is now, at most, a trickle. Grant concedes

13  that the 2000 MW "flood" has dwindled to 313.5 MW. ECF 37-3 at 4. But even

14  that number is highly exaggerated because Grant itself projects the EI Queue will

15  delay any new cryptocurrency demand for years, if not permanently, ECF 25 at 23,

16  and at least 100 MW in the current queue is from a company that no longer exists.

17  ECF 25 at 12-13 & n.44. Nor is there any evidence that any of the entities in the

18  queue have signed an interconnection agreement, as required by Grant's load

19

20

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 5

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700    fax 206 587 2308

{03687197.DOCX;5 }

1   forecast policy. ECF 25 at 4 & n.7.[2] Even if demand for new facilities from

2   cryptocurrency businesses somehow materializes, Grant now has in place a policy

3   to require new customers to pay upfront for those facilities. ECF 37-6 at 9;

4   Christensen Supp. Decl. Ex. 55 at 12 (requiring new customers 500 kW and larger

5   to pay for "any associated transmission for the requested service"). RS-17's adders

6   for new facilities are therefore redundant and effectively force Plaintiffs to

7   subsidize facilities for favored customers. Kemp Supp. Decl. ¶¶ 3.2, 6.3-6.5.

8   Finally, it is well established that forcing Plaintiffs to pay in advance for

9   transmission upgrades with no mechanism for them to recover those costs when

10  other customers use the transmission is discriminatory. *Id.* ¶ 3.3.

11      Grant's attempts to rescue the distribution adder element of RS-17 fail

12  because Grant's own documents demonstrate that no damage has occurred to its

13  distribution system and that Plaintiffs have all paid in advance for their

14  distribution equipment. ECF 25 at 19-20. Further, even if such damage occurred,

15

16  _____

17  [2] Despite the plain statement in its bond offering document that Grant considers

18  only "signed agreements" in its "load forecasts," Christensen Decl. Ex. 7, p. 24,

19  Grant now claims it follows a different policy for transmission. ECF 37-5 at 13-14.

20  But such a policy, if it existed, would be irrational. Kemp Supp. Decl. ¶ 3.12.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 6

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03687197.DOCX;5 }

Plaintiffs' high load factors mean Grant will have adequate revenue to fund needed repairs. Kemp Supp. Decl. at ¶ 5.2.

### 2.    Washington Law Bars Grant's Illegally Discriminatory Rate.

Both Washington and federal law require rates that are fair and non-discriminatory. Grant asks the Court to ignore RS-17's obvious flaws based on Grant's ratemaking discretion. ECF 37 at 11-15. But RS-17 violates every limitation the courts have laid on Grant's ratemaking discretion.

To start with, as Grant concedes, PUD rates must be cost-based and established at the "lowest possible point" and cannot be "excessive and disproportionate to the services rendered." ECF 25 at 15; *see also* McQuillan, 12 Municipal Corporations § 35:56 at 859 (3rd ed. 2017) ("A customer is entitled to assume that a municipal utility is charging it for service at the most favorable rate available"). Grant's own documents repeatedly admit that RS-17 is far in excess of Grant's cost to serve Plaintiffs. ECF 25 at 18. Further, as documented above, the justification for the rate increase has disappeared, making RS-17 grossly excessive.

In addition, rate classes must be supported by analysis showing that there is a demonstrable difference in the costs of serving the different classes. ECF 25 at 15. Grant concedes that Plaintiffs' load profiles, and therefore its costs to serve them, are no different from Grant's other high technology customers. ECF 37-5 at 8. Grant nonetheless asserts that its discriminatory treatment of Plaintiffs is

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 7

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700    fax 206 587 2308

{03687197.DOCX;5 }

1  justified by the "volatility of cryptocurrency prices" and the "mobility of

2  cryptocurrency operations." ECF 37 at 18. But Grant cannot, as it attempts here,

3  base rate classifications solely on the end use to which the electricity is put. *See*

4  *Kliks v. Dalles City*, 335 P.2d 366, 375-78 (Or. 1959). Further, there is no

5  meaningful difference in the volatility of cryptocurrency prices and the prices

6  Grant's "traditional" customers receive.  Compare, *e.g.*, ECF 32-1 at 659

7  (cryptocurrency price curve), with Christensen Ex. 57 at 8 (price curve for

8  polysilicon).[3] And Plaintiffs have invested tens of millions of dollars in buildings

9  and equipment that are *not* mobile. *See* Supplemental Declarations of Plaintiffs;

10  Kemp Supp. Decl. ¶ 2.2.

11  Further, Plaintiffs are *existing* customers of Grant, but the demand for new

12  facilities upon which Grant bases its case for RS-17 will be driven by *future*

13  cryptocurrency miners (if they appear). RS-17 fails under *Lincoln Shiloh Assocs.,*

14  *Ltd. v. Mukilteo Water Dist.*, because Grant seeks to force existing customers to

15  pay for "improvements necessitated by new customers." 45 Wn. App. 123, 129-30

16  (Wash. Ct. App. 1986); *Hillis Homes, Inc. v. PUD No. 1 of Snohomish Cnty.*, 105

17  _____

18  [3] Grant claims that REC Silicon is excused from RS-17 because it paid upfront for

19  transmission facilities. ECF 37-5 at 9. But Plaintiffs did not create the need for *any*

20  new transmission facilities or any additional generation.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 8

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

{03687197.DOCX;5 }

1    Wn. 2d 288, 300-01 (Wash. 1986) (the challenged connection charges "pay for

2    only those improvements . . . necessitated by the new customers" and "benefit

3    them alone"); *CPS Energy v. PUC of Texas*, 537 S.W.3d 157, 196-97 (Tex. App.

4    2017).

5        There is, accordingly, no rational basis for classifying Plaintiffs as "evolving

6    industry" and forcing them to pay rates that are triple what comparably-situated

7    "traditional" customers pay. *See O'Neal v. City of Seattle*, 66 F.3d 1064, 1067-69

8    (9th Cir. 1995).

9        **3.    RS-17 Does Not Survive the Federal Power Act's Prohibition of**
         **on Discrimination.**
10

11       Section 20 of the Federal Power Act ("FPA") requires Grant's rates to be

12   "reasonable, nondiscriminatory, and just to the customer" and prohibits "all

13   unreasonable discriminatory and unjust rates." 16 U.S.C. § 813. RS-17 violates

14   Section 20 because it is the poster child for unreasonable, discriminatory and

15   unjust rates. Citing *dictum* in FERC's initial order in *The Yakama Nation v. Grant*

16   *PUD*, Grant claims Section 20 does not apply. ECF 37 at 20. But the statement

17   Grant relies on follows from FERC's conclusion that FERC "has no rate

18   jurisdiction over a municipality which the state has granted self-regulatory

19   authority." FERC's order on rehearing of the same order Grant cites, and which

20   cites the same language as Grant, makes clear that FERC only "determined that,

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 9

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700    fax 206 587 2308

{03687197.DOCX;5 }

1  because Grant County is a municipality which has been expressly granted self-

2  regulatory authority by the State of Washington, the Commission has no rate

3  jurisdiction over the county under FPA Sections 19 and 2." 103 FERC ¶ 61,073 at

4  P 11 & n. 13 (2003). FERC did not determine that Section 20 is wholly

5  inapplicable. Indeed, Grant never made that claim in *Yakama*, and instead asserted

6  only that FERC does not have jurisdiction under Section 20. Christensen Supp.

7  Decl. Ex. 56.

8      Accordingly, under the plain language of Section 20, while Grant is not

9  subject to FERC jurisdiction, Grant remains obligated to comply with Section 20,

10  and this Court has jurisdiction to correct Grant's failure to meet its Section 20

11  obligations. ECF 25 at 16 n. 52. The result urged by Grant must be rejected

12  because it creates a "regulatory gap" that is contrary to Congress's intent in

13  enacting Section 20. *See Yakama Nation*, 103 FERC ¶ 61,073 at P 34.

14  **B.    Grant Violates Plaintiffs' Due Process Rights.**

15      Grant concedes that Plaintiffs have already been classified as "Evolving

16  Industry" with no notice, no hearing, no opportunity to present contrary evidence,

17  and no right of appeal. This is a clear violation of Plaintiffs' due process rights.

18      Ignoring the investments that will be destroyed, Grant claims, relying on

19  1936 precedent, that Plaintiffs have no vested right in a "particular utility rate."

20  ECF 37 at 21. But Plaintiffs clearly have a property right arising from their tens of

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 10

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

{03687197.DOCX;5 }

1   millions of dollars in investment that will be destroyed if RS-17 is adopted. ECF

2   25 at 3. Further, it is well established under Washington law that Plaintiffs have a

3   right to non-arbitrary rates and, at a minimum, to notice and hearing, ECF 25 at 21-

4   25, rights that are accorded parallel protection under the federal due process clause.

5   *Memphis Gas, Light & Water Div. v. Craft*, 436 U.S. 1, 10-22 (1978). Further,

6   Plaintiffs' property rights are threatened by RS-17's 32% premium, a direct

7   transfer of Plaintiffs' money to Grant's "traditional" customers. *Mississippi Power*

8   *Co. v. Miss. Pub. Serv. Comm'n*, 168 So.3d 905, 913-16 (Miss. 2015); *Mich. Bell*

9   *Telephone Co. v. Engler*, 257 F.3d 587, 593 (6th Cir. 2001) (due process requires a

10  mechanism to challenge confiscatory rates).

11      Grant also makes much of the long process used to develop RS-17. ECF 37

12  at 21-23. But Grant fails to address the evidence demonstrating that Grant from the

13  start singled out cryptocurrency, it never varied from this aim, and that its claims

14  that others could be classified as "evolving industries" are merely window dressing

15  "intended to keep the District from *appearing arbitrary by targeting only one*

16  *industry*." ECF 25 at 8-10. Hence, even if the process of adopting RS-17 is

17  considered legislative, it violates Plaintiffs' due process rights because they were

18  singled out from the beginning of the process. ECF 25 at 25.

19      Further, Grant's decision to classify Plaintiffs as "evolving industry" is a

20  quasi-judicial process to which heightened due process protections apply. ECF 25

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 11

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03687197.DOCX;5 }

1  at 24-25. Implicitly admitting that RS-17 cannot pass due process scrutiny, Grant

2  claims it may in the future adopt a policy requiring review of its decision to place

3  Plaintiffs in RS-17 and to require Commission ratification of Staff's decision. ECF

4  37-6 at 20-22. Even if that policy were eventually adopted, it cannot cure the

5  violation of Plaintiffs' due process rights that has already occurred. And, at this

6  point, the Court has before it only RS-17, which is completely devoid of any such

7  procedural protections. ECF 32-1 at 427-29.

8  **C.    RS-17 Violates Article 1, § 12 of the Washington Constitution.**

9       By favoring privileged local interests at the expense of Plaintiffs, RS-17

10  violates the privileges and immunities clause of the Washington State Constitution,

11  Article 1, § 12. Conceding that RS-17 threatens Plaintiffs' constitutionally

12  protected privileges and immunities, ECF 25 at 25-26, Grant argues only[4] that it

13  had "reasonable grounds" for discriminating against Plaintiffs in favor of

14  established local interests. ECF 37 at 24-25. But there are no such "reasonable

15  grounds." As discussed above, the supposed distinctions between Plaintiffs and

16  "traditional" Grant customers—the "volatility" of cryptocurrency prices and the

17  "mobility of cryptocurrency operations"—are illusory. Therefore, Grant has

18  

_____

19  [4] While Grant broadly asserts that Plaintiffs "misrepresent the purpose" of Article

20  1, § 12, it does not explain how Plaintiffs have done so. ECF 37 at 23.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 12

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

{03687197.DOCX;5 }

"[granted] an exception from a regulatory law that benefits certain businesses at the expense of others" without any reasonable grounds for doing so, in violation of Article 1, § 12. *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn. 2d 342, 360 (Wash. 2015).

### III.    PLAINTIFFS FACE IMMEDIATE HARM FROM THE ADOPTION OF RS-17.

Grant's violation of Plaintiffs' constitutional rights by itself establishes imminent harm justifying a preliminary injunction. ECF 25 at 28. Further, if RS-17 is adopted, Plaintiffs will face huge rate increases that will force them into bankruptcy, independently establishing imminent harm. ECF 25 at 27. Grant merely quibbles, conceding that Plaintiffs' rates will rise 32% on April 1, 2019, ECF 37 at 25, while ignoring the two additional rate increases already scheduled for April 1, 2020, and April 1, 2021. Under the Court's recent scheduling order, there is little doubt that, without a preliminary injunction, Plaintiffs will be forced to pay both the 2019 and 2020 rate increases. If the schedule slips, Plaintiffs likely will be forced to absorb the 2021 increase, as well.

In light of these extreme rate increases, there is no reason to doubt that Plaintiffs will face bankruptcy if RS-17 goes into effect. This establishes immediate harm because neither a post-trial award nor Grant's promise to refund overpayments will help Plaintiffs once they are forced out of business. ECF 25 at 27.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 13

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700    fax 206 587 2308

{03687197.DOCX;5 }

## IV.    THE EQUITIES FAVOR GRANTING A PRELIMINARY INJUNCTION.

The EI Queue, which Plaintiffs do not seek to enjoin as this time, assures that no new cryptocurrency operations will enter Grant County for years, if ever. ECF 25 at 28. Further, the evidence demonstrates the collective cryptocurrency load in Grant County is well below RS-17's "concentration" threshold, ECF 25 at 23 & n.74, and Plaintiffs each have a substantial deposit with Grant County that would cover any losses Grant might experience if any Plaintiff stops taking service. ECF 25 at 29. Accordingly, the needs Grant cites for adopting RS-17 no longer exist and Grant – in stark contrast to Plaintiffs – will suffer no harm if a preliminary injunction is granted. On the contrary, if RS-17 is adopted, Grant's ratepayers will be forced to absorb the loss of approximately $2 million Plaintiffs otherwise would have paid Grant. ECF 25 at 12, 37. The public interest therefore fully supports granting a preliminary injunction.

## V.    NO BOND SHOULD BE REQUIRED.

The court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 328 F. Supp. 3d 1133, 1153 (E.D. Wash. 2018) (internal citations omitted); *see also Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009);

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 14

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700    fax 206 587 2308

{03687197.DOCX;5 }

1    *Ochoa v. Campbell*, 266 F. Supp. 3d 1237, 1260 (E.D. Wash. 2017). For the

2    reasons set forth above, a preliminary injunction will not impose any costs on

3    Grant and there is no justification for requiring Plaintiffs to post a bond in this

4    case.

5                              **VI.    CONCLUSION**

6            For the reasons discussed above, Plaintiffs respectfully request the Court to

7    grant a preliminary injunction barring Grant PUD from imposing any rate increases

8    under RS-17 until final resolution of this litigation.

9

10           DATED this 8th day of March, 2019.

11                                  CAIRNCROSS & HEMPELMANN, P.S.

12                                  /s/ *Eric L. Christensen*
                                    Eric L. Christensen WSBA No. 27934
13                                  E-mail: echristensen@cairncross.com
                                    Jonathan D. Tebbs, WSBA No. 53861
14                                  E-mail: jtebbs@cairncross.com
                                    524 Second Avenue, Suite 500
15                                  Seattle, WA 98104-2323
                                    Telephone: (206) 587-0700
16                                  Facsimile: (206) 587-2308
                                    Attorneys for Plaintiffs

17

18

19

20

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 15

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

{03687197.DOCX;5 }

1

## Certificate of Service

2    I, Eric L. Christensen, certify under penalty of perjury of the laws of the

3 State of Washington that on March 8, 2019, I electronically filed this document

entitled PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR

4 PRELIMINARY INJUNCTION and the supporting declarations and exhibits using

5 the CM/ECF system which will send notification of such filing to the following

6 persons:

7 *Attorneys for Defendants*

8 Malcolm McLellan, WSBA #23346
Dale Johnson, WSBA #26629
Van Ness Feldman

9 719 Second Avenue, Suite 1150
Seattle, WA  98104-1700

10 T:  206.623.9372 / F:  206.623.4986
E: mcm@vnf.com

11 E: dnj@vnf.com
Assistant:  agales@vnf.com

12 Assistant:  ack@vnf.com

13 *Attorneys for The Committee of Unsecured Creditors of Giga Watt, Inc.*

14 Ben Ellison, WSBA #48315
Daniel J. Bugbee, WSBA #42412
Dominique R. Scalia, WSBA #47313

15 DBS Law
155 NE 100th Street, Suite 205

16 Seattle, WA  98125
T:  206.489.3802
F:  206.973.8737

17 E:  bellison@lawdbs.com
E:  dbugbee@lawdbs.com
E:  dscalia@lawdbs.com

18

19

20

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 16

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{03687197.DOCX;5 }

1    DATED this 8th day of March, 2019, at Seattle, Washington.

2

3                                    /s/ *Eric L. Christensen*
                                     Eric L. Christensen, Attorney for Plaintiffs
                                     CAIRNCROSS & HEMPELMANN, P.S.

4                                    524 Second Avenue, Suite 500
                                     Seattle, WA  98104-2323

5                                    Telephone: (206) 254-4451
                                     Facsimile: (206) 587-2308

6                                    E-mail: echristensen@cairncross.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR          CAIRNCROSS & HEMPELMANN, P.S.
PRELIMINARY INJUNCTION - 17                         ATTORNEYS AT LAW
                                                    524 Second Avenue, Suite 500
                                                    Seattle, Washington  98104-2323
                                                    office 206 587 0700   fax 206 587 2308

{03687197.DOCX;5 }